*Court of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*



# OPINION

No. 04-09-00561-CV

**PNS STORES, INC.** d/b/a MacFrugal's Bargain Closeouts
d/b/a MacFrugals, Inc.,
Appellants

v.

Anna E. **RIVERA** as Next Friend for Rachel Rivera,
Appellee

From the 224th Judicial District Court, Bexar County, Texas
Trial Court No. 2009-CI-03071
Honorable Gloria Saldana, Judge Presiding

Opinion by:    Marialyn Barnard, Justice

Sitting:    Sandee Bryan Marion, Justice
            Phylis J. Speedlin, Justice
            Marialyn Barnard, Justice

Delivered and Filed:  November 3, 2010

AFFIRMED

This is an appeal from the granting and denial of summary judgment motions related to a bill of review.  PNS Stores, Inc. d/b/a MacFrugal's Bargain Closeouts d/b/a MacFrugals, Inc. ("PNS") filed a bill of review, attempting to overturn a state court default judgment.  Both parties filed motions for summary judgment relating to the bill of review.  The trial court denied PNS's motion for summary judgment, and granted the motions for summary judgment filed by Anna E. Rivera as next friend of Rachel Rivera ("Rivera").  On appeal, PNS contends the trial court erred

in denying its motion for summary judgment and granting the "traditional motion for summary judgment, [ ] no evidence motion for summary judgment, and three supplemental motions for summary judgment" filed by Rivera. PNS raises the following issues, challenging the trial court's judgment in favor of Rivera, and contending:

> (1) the federal court's dismissal of Rivera's claims against PNS by summary judgment voids the subsequent state court default judgment based on res judicata and collateral estoppel;
>
> (2) the default judgment in favor of Rivera is void because the state court lacked jurisdiction over PNS because the face of the record affirmatively shows lack of service and improper service on PNS;
>
> (3) the trial court unconstitutionally applied a four-year statute of limitations to PNS's claim because PNS had no knowledge of Rivera's state court suit or the default judgment for nine years;
>
> (4) the amount of unliquidated damages awarded in the default judgment is unenforceable because the record is devoid of any evidence of damages;
>
> (5) the trial court erred in granting Rivera's motions for summary judgment because PNS presented more than a scintilla of evidence on extrinsic fraud, including fraud by Rivera's former attorney;
>
> (6) the trial court erred in denying PNS's motion to compel Rivera's children to answer non-privileged questions relevant to extrinsic fraud;
>
> (7) the trial court erred in denying PNS's request to supplement its summary judgment response with official bankruptcy records filed by Rivera's former attorney; and
>
> (8) the trial court erred in denying PNS's request to supplement its summary judgment response with the deposition of James W. Karel.

We affirm the trial court's judgment.

**BACKGROUND**

In 1998, sixty-eight-year-old Rachel Rivera was shopping at a MacFrugal's Bargain Closeouts store in San Antonio, Texas when she allegedly slipped and fell on a toy lying in the aisle, sustaining a broken hip. As a result of the alleged fall and injury, Rivera filed suit in Bexar County, Texas on December 29, 1998, asserting premises liability and negligent training and supervision claims against PNS. According to Rivera, PNS was served with process through its registered agent, Prentice Hall Corporation Systems ("Prentice Hall"), and received the notice of process on or about January 15, 1999.

In January 1999, PNS removed the case to federal court based on diversity jurisdiction. Ultimately, PNS filed a motion for summary judgment on all of Rivera's claims, contending there was no evidence of actual or constructive knowledge of the dangerous condition. The case was referred to a federal magistrate. Following two recommendations that PNS's motion for summary judgment be granted, a federal judge accepted the magistrate's recommendation, and on January 7, 2000, entered a judgment granting PNS's motion for summary judgment and dismissing the case. The January 7, 2000 judgment was specifically entered "without prejudice." It was not until May 14, 2009, that the federal judge, at PNS's request, issued a *nunc pro tunc* order clarifying that the original summary judgment was with prejudice.[1]

On January 11, 2000, just four days after the summary judgment was entered, PNS received a letter from one if its attorneys, James W. Karel, who advised PNS that although

---

[1]We express no opinion as to whether the *nunc pro tunc* order, which changed the dismissal from a dismissal without prejudice to a dismissal with prejudice, was a valid *nunc pro tunc* order. *See generally Andrews v. Koch*, 702 S.W.2d 584, 585 (Tex. 1986) (holding trial court may only correct clerical errors by *nunc pro tunc* judgment, but may not correct judicial errors, and clerical errors are those that do not result from judicial reasoning or determination); *B.Z.B., Inc. v. Clark*, 273 S.W.3d 899, 903 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (stating that purpose of judgment *nunc pro tunc* is to correct clerical error in judgment after expiration of court's plenary power, and holding that for error to be "clerical" in nature, it "must be one that is not the result of judicial reasoning, evidence, or determination.").

summary judgment had been granted, the case had been dismissed without prejudice. As Karel explained, in pertinent part:

> . . . [the federal judge] dismissed this case without prejudice. As I am sure you know, we are of the opinion that the Judge should have dismissed the case with prejudice to refiling and we have tried to "second guess" the reason for [the judge's] not doing so. With the caveat that it is, at best, well reasoned speculation, I think that the purpose for the Court not dismissing the case with prejudice was to afford the Plaintiff the best possible opportunity to keep her case alive. Perhaps [the judge] is thinking that Ms. Rivera may well elect to get a different attorney to either prosecute some post-trial motions . . . . It is also plausible that [the judge] is trying to send a message to Ms. Rivera that inasmuch as the statute of limitations has not yet run, she may wish to consider refiling the lawsuit. For whatever reason, although we could, theoretically, try to persuade the Court to dismiss the case with some post-trial motions, I do not recommend we pursue that course of action.
>
> Having said all this, inasmuch as the statute of limitations has not yet run, it is always possible that Plaintiff's counsel may elect to refile this case, either in State District Court or in Federal Court.

As predicted by Karel, Rivera refiled her case in state court on April 5, 2000, asserting claims against PNS that were identical to those dismissed pursuant to the federal court's summary judgment order. Rivera's attorney was Oscar Tamez, the same attorney she had when she first filed the suit. The summary judgment evidence shows notice of the suit was served on Prentice Hall, just as it had been when Rivera filed her original suit in state court. The summary judgment evidence also shows the notice of suit was sent certified mail, return receipt requested, and received by Prentice Hall on May 25, 2000.[2] Prentice Hall's records, according to the testimony of its custodian of records, show the notice was forwarded to PNS. More specifically, once Prentice Hall received the notice of process regarding Rivera's second lawsuit, a Prentice

---

[2] All of the evidence regarding Prentice Hall's receipt of process, subsequent forwarding of the information to PNS, as well as the later receipt of the acknowledgment from PNS, was based on archived computer information. According to the evidence, Prentice Hall, in the normal course of business, destroyed all hard copies of the documents after a certain period of time.

Hall employee input the information into its computer system. Thereafter, Sequent, a computer program used by the company, generated a Notice of Service of Process form addressed to PNS, which described the papers being transmitted to PNS by Prentice Hall, and requesting PNS acknowledge receipt of the documents:

> Please acknowledge receipt of this notice and the enclosures by signing and returning the acknowledgment copy.

The notice generated by Prentice Hall, a copy of the lawsuit, the acknowledgment form, and a return envelope for the acknowledgment were forwarded via Federal Express Overnight to the attention of "Michael Schlonsky, Esquire" in Columbus, Ohio, an attorney and the head of PNS's risk management department. From 2000 to 2005, Schlonsky was PNS's designated recipient for this type of information.[3] According to its computer records, Prentice Hall received the acknowledgment that PNS had received the notice of Rivera's second lawsuit on June 2, 2000–within eight days of the time it was first sent by Prentice Hall. Prentice Hall's custodian of records testified that if the acknowledgment had not been received by Prentice Hall within ten days, a reminder notice would have been automatically sent.

Despite the foregoing, PNS claims it never received Rivera's April 5, 2000 petition. PNS points out that the filings in the default judgment action contained a certified mail green card showing service on Prentice Hall on May 25, but no year of service is shown. PNS further contends the officer's return, executed by a private process server, is in conflict because it shows service by mail "VIA USPS," and states it was served "in person" at "800 Brazos St. Austin, TX 78701." Thus, according to PNS, the default judgment record does not establish when service was made or how.

---

[3] The notice of process from Rivera's original suit had been forwarded to Andrew White, a person with the same address as Michael Schlonsky, because at the time of the original suite White was PNS's designated recipient for such information.

PNS did not file an answer to Rivera's second state court suit. Accordingly, on June 20, 2000, Rivera sought and obtained a default judgment against PNS in the amount of $1,480,677.74 plus post-judgment interest. According to an affidavit from the court reporter, who was in the trial court on June 20, 2000, a request for a reporter's record from the default judgment hearing was made; however, she could not confirm any record was actually taken because she was only required to keep her notes for three years, and all of her records from the time period of the default judgment had been destroyed. *See* TEX. GOV'T CODE ANN. § 52.046(a)(4) (West 2005) (requiring court reporter to maintain notes for three years from date of hearing). On the same day the default judgment was entered, Rivera's attorney, Oscar Tamez, filed a "Certificate of Last Known Address" for PNS, naming Prentice Hall and providing its address.

According to deposition testimony from Prentice Hall's custodian of records, Prentice Hall received a Notice of Judgment from the Bexar County District Clerk on June 29, 2000. The notice was dated June 26, 2000. Prentice Hall processed the notice, sending it via Federal Express to Schlonsky, just as it did the notice of suit and the petition. Just as before, Prentice Hall subsequently received an acknowledgment from PNS that it had received the notice of judgment. Prentice Hall's computer records show it received the acknowledgment on July 12, 2000. The process used to notify PNS of the judgment was the same process Prentice Hall used when it notified PNS of Rivera's April 5, 2000 lawsuit.

PNS complains Tamez listed Prentice Hall, the registered agent, and gave its address despite having knowledge of the local store address where Rivera was injured. Despite his knowledge, Tamez did not provide that information nor did he provide the address of PNS's corporate office. PNS also points out that Tamez never contacted Karel or any other attorney he

knew had represented PNS in the original suit to advise that Rivera had refiled her suit in state court, intended to take a default judgment, or that judgment had been entered. PNS contends it never received notice of the default judgment, and only learned of the judgment on February 10, 2009, when it received a writ of execution through a new registered agent, Corporation Service Company, and at the store where the injury occurred. As a result of the passage of time, the amount of default judgment had reached $3,513,070.55 when execution was attempted.

On February 19, 2009, PNS filed a bill of review in an attempt to set aside the default judgment. Rivera answered, and the parties conducted discovery as to why PNS failed to take any action for nine years.[4] During the state court discovery process, PNS filed a motion with the federal court asking it to revise its original dismissal to state that it was "with prejudice" instead of "without prejudice." On May 14, 2009, the federal court granted PNS's motion and entered a *nunc pro tunc* judgment stating the dismissal of Rivera's suit was "with prejudice." Rivera is appealing that decision to the Fifth Circuit Court of Appeals.

After the trial court issued its *nunc pro tunc* judgment, PNS filed another motion in federal court, asking the court to reopen the case and enjoin the Texas trial court from exercising jurisdiction over the refiled state case. On March 25, 2009, the federal court denied PNS's motion to reopen and for injunctive relief. In its order, the federal court stated, "Challenges to the correctness of a state court's determination as to the conclusive effect of a federal judgment must be pursued by way of appeal through the state-court system and certiorari from this Court."

During discovery, PNS deposed Anna E. Rivera, Rachel's daughter, and several other members of the Rivera family. During the depositions, attorneys for PNS asked numerous questions about what Tamez and other attorneys told the Riveras about waiting to collect on the

---

[4] It was at this time that Anna E. Rivera, the daughter of Rachel Rivera, entered the lawsuit as her mother's next friend. By the time PNS filed its bill of review, Rachel Rivera was seventy-nine-years-old and incapacitated.

judgment, and when they could expect to receive money from the judgment. At the direction of their attorney, the Riveras asserted attorney-client privilege in response to these questions. PNS moved to compel answers to those questions, which it contends would provide evidence of extrinsic fraud, but the trial court denied the motions to compel.[5]

Ultimately, PNS and Rivera filed motions for summary judgment on the bill of review. PNS moved for summary judgment on the grounds that default judgment was void because (1) res judicata and collateral estoppel attached to the summary judgment granted by the federal court, rendering the default judgment void, and (2) service was improper, and therefore the trial court lacked jurisdiction over PNS. Rivera moved for summary judgment on traditional and no evidence grounds, arguing PNS's bill of review was barred by the four-year statute of limitations, and it had no evidence of extrinsic fraud that would overcome limitations. On June 8, 2009, after having been informed of the federal court's decision to alter its judgment to state that the federal dismissal of Rivera's suit was "with prejudice," the trial court granted Rivera's motions for summary judgment and denied PNS's motion. The parties entered into an agreed temporary injunction to stay execution, and PNS posted a surety bond for the full amount of the default judgment. PNS filed a motion for new trial, which was overruled by operation of law, and then timely perfected this appeal.

---

[5] PNS attempted to depose Tamez, who was disbarred in 2004, but even after they were able to obtain service, Tamez simply failed to appear for his deposition. Because of its inability to depose Tamez or obtain information from the Rivera family about what Tamez told them, PNS includes in its brief statements made "upon information and belief" Those statements include PNS's belief that Tamez told the Riveras they would have to wait more than four years to collect on the default judgment, suggesting Tamez was attempting to fraudulently conceal the default judgment to preclude PNS from timely filing a bill of review. However, there is no evidence in the record establishing Tamez made any such statement to Ms. Rivera or any member of her family.

**ANALYSIS**

*Effect of Federal Summary Judgment on State Default Judgment:*
*Res Judicata and Collateral Estoppel*

PNS first argues the trial court erred in denying its motion for summary judgment because "the doctrines of *res judicata* and *collateral estoppel* void the 2000 Default Judgment because the United States Court for the Western District of Texas previously granted summary judgment and dismissed all of Rivera's . . . claims . . . with prejudice." We find PNS's underlying premise with regard to the effect of res judicata and collateral estoppel fundamentally flawed.

A judgment is void only when it is apparent the court rendering judgment had no jurisdiction of the parties, no jurisdiction of the subject matter, no jurisdiction to enter the judgment, or no capacity to act as a court. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010) (citing *Browning v. Placke*, 698 S.W.2d 362, 348 (Tex. 1985)). Here, PNS contends the default judgment is void because the state court matter was fully determined by the federal court, and therefore res judicata and collateral estoppel deprived the state court of subject matter jurisdiction. However, Texas courts have long recognized that res judicata and collateral estoppel are affirmative defenses that constitute pleas in bar, not pleas to the jurisdiction. *See, e.g., Tex. Hwy. Dep't v. Jarrell*, 418 S.W.2d 486, 488 (Tex. 1967); *Resendez v. Garcia*, No. 04-05-00081-CV, 2005 WL 2654069, at *3 (Tex. App.—San Antonio Oct. 19, 2005, no pet.) (mem. op.).

In *Jarrell*, the supreme court distinguished between a plea in bar and a plea to the jurisdiction, and specifically held res judicata was not a plea to the jurisdiction, but a plea in bar. 418 S.W.2d at 488. And, as recognized by this court in 1980, even if a claim of res judicata has merit, it would not deprive the trial court of subject matter jurisdiction. *Int'l Bank of Commerce*

*v. City of Laredo*, 608 S.W.2d 267, 269 (Tex. Civ. App.—San Antonio 1980, writ dism'd). Both of these cases support the proposition that even meritorious claims of res judicata or collateral estoppel will not deprive a court of jurisdiction. *See Jarrell*, 418 S.W.2d at 488; *Int'l Bank of Commerce*, 608 S.W.2d at 269.

PNS cites several cases holding a summary judgment rendered pursuant to rule 56 of the Federal Rules of Civil Procedure is a final judgment. *See Exhibitors Poster Exch. v. Nat'l Screen Serv. Corp.*, 421 F.2d 1313, 1319 (5th Cir. 1970); *Meador v. Oryx Energy Co.*, 87 F.Supp.2d 658, 664 (E.D. Tex. 2000); *Keys v. Sawyer*, 353 F.Supp. 936, 940 (S.D. Tex. 1973); *see also* FED. R. CIV. P. 56. We agree with this contention. However, the fact that it is a final judgment that might bar a subsequent suit under the concepts of res judicata or collateral estoppel does not mean it deprives the court in which the subsequent suit was filed of subject matter jurisdiction. In fact, in *Meador* the court specifically recognized the doctrines of res judicata and collateral estoppel *barred* a subsequent suit on the same claims or issues after the granting of a summary judgment. 87 F.Supp.2d at 663-65. The *Meador* court did not hold that the doctrines deprived the court of subject matter jurisdiction, and PNS has cited no authority holding or even suggesting any plea in bar would deprive a court of subject matter jurisdiction. *See id.*

Because res judicata and collateral estoppel are claims in bar as opposed to jurisdictional pleas, even if meritorious they would not deprive the state trial court of subject matter jurisdiction, and accordingly the default judgment was, at best, voidable. *See In re Ocegueda*, 304 S.W.3d 576, 579 (Tex. App.—El Paso 2010, pet. denied) (holding all errors other than lack of jurisdiction merely render judgment erroneous or voidable, not void) (citing *Cook v. Cameron*, 733 S.W.2d 137, 140 (Tex. 1987); *Peacock v. Wave Tec Pools, Inc.*, 107 S.W.3d 631, 636 (Tex.

App.—Waco 2003, no pet.) (same) (citing *Browning*, 698 S.W.2d at 363). We therefore overrule this issue.

### *Summary Judgment on Bill of Review: Service and Limitations*

Before we begin our substantive analysis on the issues of lack of service and application of limitations, which are asserted by PNS in issues two and three, we must determine the nature of PNS's attack–direct versus collateral–because it is critical to a determination of the applicable scope of review. *Compare McKanna v. Edgar*, 388 S.W.2d 927, 929-30 (Tex. 1965) (holding that in direct attack, no presumptions are indulged in favor of valid issuance, service, or return of citations in support of default judgment) *with Wagner v. D'Lorm*, 315 S.W.3d 188, 194 n.2 (Tex. App.—Austin 2010, no pet.) (recognizing that for collateral attack to succeed, party challenging judgment must show error on face of judgment).

A direct attack is a proceeding instituted to correct, amend, replace, or modify an earlier judgment, and secure the entry of a single, proper judgment. *Austin Indep. Sch. Dist. v. Sierra Club*, 495 S.W.2d 878, 881 (Tex. 1973); *Pursley v. Ussery*, 937 S.W.2d 566, 567-68 (Tex. App.—San Antonio 1996, no pet.). A direct attack must be brought in the court that rendered the judgment, or in a court with appellate jurisdiction over the court that rendered the judgment. *Id.* Examples of direct attacks include: motions to vacate, modify and reform; motions for new trial; ordinary appeals, restricted appeals, and bills of review. *In re V.M.I.*, No. 01-02-00687-CV, 2003 WL 1091901, at *2 (Tex. App.—Houston [1st Dist.] Mar. 13, 2003, no pet.) (mem. op.); *Glunz v. Hernandez*, 908 S.W.2d 253, 255 n.3 (Tex. App.—San Antonio 1995, writ denied). Accordingly, a bill of review, when properly brought, is a direct attack. *McEwen v. Harrison*, 162 Tex. 125, 131, 345 S.W.2d 706, 709 (1961); *Min v. Avila*, 991 S.W.2d 495, 499 (Tex. App.—Houston [1st Dist.] 1999, no pet.); *Magan v. Hughes Television Network, Inc.*, 727

S.W.2d 104, 105 (Tex. App.—San Antonio 1987, no writ). When parties bring a direct attack by bill of review, no presumptions are indulged in favor of valid issuance, service, or return of citations in support of a default judgment. *McKanna*, 388 S.W.2d at 929-30; *Min*, 991 S.W.2d at 499; *Magan*, 727 S.W.2d at 105.

A collateral attack, on the other hand, does not attempt to secure the rendition of a single, correct judgment in place of an earlier one. *Austin Indep. Sch. Dist.*, 495 S.W.2d at 881; *Solomon, Lambert, Roth & Assocs., Inc. v. Kidd*, 904 S.W.2d 896, 899 (Tex. App.—Houston [1st Dist.] 1995, no writ). Rather, it is "'an attempt to avoid the effect of a judgment in a proceeding brought for some other purpose.'" *Kidd*, 904 S.W.2d at 899 (quoting *Employers Cas. Co. v. Block*, 744 S.W.2d 940, 943 (Tex. 1988)). Because it does not seek the rendition of a new judgment to replace the judgment under attack, a collateral attack can be brought in any court of general jurisdiction. *Austin Indep. Sch. Dist.*, 495 S.W.2d at 881. With limited exceptions, to prevail on a collateral attack, the challenger must show the judgment is void, not voidable, and must do so based on the face of the judgment. *Wagner*, 315 S.W.3d at 193 n.2 (recognizing that for collateral attack to succeed, party challenging judgment must show error on face of judgment); *Kidd*, 904 S.W.2d at 901 (holding authority to inquire into jurisdiction of court rendering default judgment is limited to examining face of default judgment); *see also Stewart v. USA Custom Paint & Body Shop, Inc.*, 870 S.W.2d 18, 20 (Tex. 1994) (holding that "[i]n a collateral attack, the judgment under attack is presumed valid[.]"); *Akers v. Simpson*, 445 S.W.2d 957, 959 (Tex. 1969) (holding jurisdictional recitations in judgment that is regular on its face import absolute verity and can be attacked only directly, not collaterally); *Pure Oil Co. v. Reece*, 124 Tex. 476, 78 S.W.2d 932, 934 (1935) (same).

Here, PNS brought a bill of review seeking to set aside or vacate the default judgment in favor of Rivera; it did not attempt to avoid the effect of the default judgment in a proceeding brought for some other purpose. The bill of review was filed in the court that rendered the default judgment. PNS has, therefore, by definition, brought a direct attack on the default judgment, and we must review it accordingly.

A bill of review must be brought within four years of the date of the challenged judgment absent a showing of extrinsic fraud. *Caldwell v. Barnes*, 975 S.W.2d 535, 538 (Tex. 1998) (holding residual four-year statute of limitations in section 16.051 of Texas Civil Practice & Remedies Code applies to bill of review); *Manley v. Parsons*, 112 S.W.3d 335, 338 (Tex. App.—Corpus Christi 2003, pet. denied) (holding only exception to four-year limitations period for bill of review is where petitioner proves extrinsic fraud); *Defee v. Defee*, 966 S.W.2d 719, 722 (Tex. App.—San Antonio 1998, no pet.) (same); *see* TEX. CIV. PRAC. & REM. CODE ANN. § 16.051 (West 2008). Intrinsic fraud will not suffice.[6] *Alexander v. Hagedorn*, 148 Tex. 565, 568-69, 226 S.W.2d 996, 998 (1950). "Extrinsic fraud" is fraud that denies a party the opportunity to fully litigate at trial all the rights or defenses that could have been asserted. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 752 (Tex. 2003); *Vickery v. Vickery*, 999 S.W.2d 342, 347 (Tex. 1999). It is wrongful conduct that occurs outside of the trial and affects the manner in which the judgment is procured. *Montgomery v. Kennedy*, 669 S.W.2d 309, 312-13 (Tex. 1984); *Temple v. Archambo*, 161 S.W.3d 217, 224 (Tex. App.—Corpus Christi 2005, no pet.). It is conduct that prevents a true trial on the merits on the issues. *Montgomery*, 669 S.W.2d at 313. It has been described as "collateral fraud" in that it must be "collateral" to the matter actually tried, not

---

[6] "Intrinsic fraud" is fraud that is inherent in the matters considered and determined at trial "'where the fraudulent acts pertain to an issue involved in the original action, or where the acts constituting the fraud were, or could have been litigated therein.'" *Montgomery*, 669 S.W.2d at 313 (quoting *Mills v. Baird*, 147 S.W.2d 312, 316 (Tex. Civ. App.—Austin 1941, writ ref'd)).

something that was actually or potentially an issue at trial. *Id.*; *Temple*, 161 S.W.3d at 224. Importantly, to establish extrinsic fraud, there must be a showing that the fraud was purposeful, and occurred during the procurement of the judgment. *Layton v. Nationsbanc Mortg. Corp.*, 141 S.W.3d 760, 763 (Tex. App.—Corpus Christi 2004, no pet.). If extrinsic fraud is present, the deadline for filing the bill of review does not begin to run until the petitioner discovered, or in the exercise of due care, ought to have discovered the fraud. *Defee*, 966 S.W.2d at 722.

Rivera established PNS's bill of review was untimely in its motion for summary judgment, and filed a no evidence motion for summary judgment contending there was no evidence of extrinsic fraud. It is undisputed that the bill of review was filed more than four years after entry of the default judgment. PNS argues there was evidence of extrinsic fraud in this case. PNS contends Rivera's former attorney, Tamez, committed extrinsic fraud because he: (1) failed to notify personally PNS or its attorneys before taking a default judgment; (2) provided the clerk of the court with the address of PNS's registered agent, not its attorneys, for purposes of notice of judgment; and (3) delayed execution of judgment, and instructed the Rivera family to do the same, for almost ten years to preclude PNS from finding out about the judgment in time to file a bill of review. We disagree with PNS's contention that these acts, even if true, constitute extrinsic fraud.

The failure to serve an opponent with personal service in order to obtain a judgment without notice is extrinsic fraud. *Layton*, 141 S.W.3d at 763; *In re Marriage of Ham*, 59 S.W.3d 326, 332 (Tex. App.—Texarkana 2001, no pet.) (citing *Forney v. Jorrie*, 511 S.W.2d 379, 384 (Tex. Civ. App.—San Antonio 1974, writ ref'd n.r.e.)). However, in Texas, a domestic or foreign corporation authorized to transact business in Texas may be served with process through its registered agent. *Reed Elsevier, Inc. v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 180

S.W.3d 903, 905 (Tex. App.—Dallas 2005, pets. denied). PNS does not dispute the fact that it had a registered agent, Prentice Hall, or that the registered agent received service of process. Rather, PNS contends that because Tamez knew PNS's attorneys and corporate representatives, it should have directed service to them. We hold this does not constitute the type of purposeful fraud that will delay the running of limitations given that Texas law permits service through a registered agent. *See id.*

PNS's other allegations, providing the clerk for purposes of notice of judgment with the name and address of the registered agent as opposed to that of PNS or its attorney and delay in execution of judgment, will not support a claim of extrinsic fraud because these were not actions taken in the procurement of the judgment, but after rendition and entry of judgment. *See Layton*, 141 S.W.3d at 763. Moreover, it cannot be fraud for counsel to attempt compliance with Texas Rule of Civil Procedure 239a, which requires a party taking a default judgment to certify to the court clerk the last known mailing address of the party against whom the default judgment was taken, by providing the clerk with the last known mailing address of the defaulting party's registered agent. *See Layton*, 141 S.W.3d at 763 (holding defaulting party failed to demonstrate extrinsic fraud based on claim that party taking default judgment filed a certificate of last known address under rule 239a with address previously provided for receipt of payments); *see also* TEX. R. CIV. P. 239a.

Because the bill of review was undisputedly filed more than four years after the default judgment was entered, and there is no evidence of extrinsic fraud, we hold the trial court properly denied PNS's bill of review based on the four-year statute of limitations. *See Defee*, 966 S.W.2d at 722 (holding trial court erred in granting untimely bill of review in absence of evidence of extrinsic fraud). Moreover, given the absence of any evidence of extrinsic fraud,

PNS's fifth issue, which specifically challenges the trial court's order granting Rivera's motions for summary judgment on the basis of extrinsic fraud, is overruled.

It is an appropriate point at which to discuss PNS's sixth issue in which it complains of the trial court's failure to grant its motions to compel discovery  In its motion to compel as to Anna Rivera, PNS identified eight questions Anna Rivera refused to answer at her deposition:

> •Did you ever talk to Oscar Tamez about PNS not being at the default hearing?
>
> •Did Oscar Tamez ever tell you or your mother that you should wait four years before trying to enter the default judgment?
>
> •Did you ever ask – you, personally, ever ask Mr. Tamez why it was taking so long to get the judgment enforced?
>
> •Did Mr. Tamez tell you that he was going to wait four to five years before collecting on the default judgment?
>
> •Did Mr. Tamez tell your mother, in your presence, to wait four or five years before the default judgment was enforced?
>
> •Did you have any conversations with your sisters and brothers even with the Tinsman firm about why it was taking so long for the judgment to be paid?
>
> •Isn't it true that Mr. Tamez told your mother to wait at least four years before enforcing the judgment?
>
> •Isn't it true that Oscar Tamez told you – or in front of you told your parents to wait at least four years before enforcing the default judgment?

These were essentially the same questions asked of Anna Rivera's siblings.  To each of these questions, an attorney instructed Rivera, and later her siblings, not to answer questions about communications with Tamez that were "not in the presence of a third party such as while at the court proceeding[,]" communications that were between Tamez and the siblings or parents "as clients[,]" communications with Tamez that occurred in the absence of third parties, and

communications between any sibling and the [ ] attorneys "in the context of the attorney/client relationship." Based on the failure of the deponents to answer these questions, PNS filed a motion to compel in which it argued the information sought pursuant to these questions was not protected by the attorney-client privilege because the conversations were held between the attorneys and non-clients, or with clients but in front of, or shared with, persons who were not clients, thereby negating any privilege based on the attorney-client relationship. *See* TEX. R. EVID. 503(b) (stating attorney-client privilege protects confidential communications between client and attorney). PNS also argued that even if the information was privileged, the privilege was waived under the offensive-use doctrine. *See Republic Ins. Co. v. Davis*, 856 S.W.2d 158, 163 (Tex. 1993) (orig. proceeding) (holding party cannot claim attorney-client privilege while simultaneously seeking affirmative relief; when privilege is used as sword rather than shield, it is waived).

PNS argued to the trial court that it needed this information because it believed Tamez may have instructed Anna or Rachel "to wait until the limitations period had expired before they proceed on execution of the judgment." PNS claimed that if Tamez had so instructed the women, "[i]t would be [evidence of] extrinsic fraud." Even if we assume PNS is correct and the communications were not privileged or privilege was waived by offensive use, the trial court did not err in refusing to compel disclosure.

When a trial court denies a motion to compel discovery, the ruling is reviewed under an abuse of discretion standard. *MRT, Inc. v. Vounckx*, 299 S.W.3d 500, 509 (Tex. App.—Dallas 2009, no pet.); *see Gen. Tire, Inc. v. Kepple*, 970 S.W.2d 520, 526 (Tex. 1998) (holding courts employ abuse of discretion standard to review trial court's discovery rulings). If the reviewing court determines there was an abuse of discretion, the court must still determine whether the

error probably caused the rendition of an improper judgment. TEX. R. APP. P. 44.1(a); *Austin v. Countrywide Home Loans*, 261 S.W.3d 68, 75 (Tex. App.—Houston [1st Dist.] 2008, pet. denied).

Essentially, by its questions to Anna Rivera and her siblings, PNS sought to obtain evidence to support its contention that Tamez committed extrinsic fraud with regard to service, notice of judgment, and delay in execution of judgment. As discussed above however, even if Tamez did as PNS suggests, his actions do not amount to extrinsic fraud as a matter of law. Accordingly, the evidence PNS sought from Anna Rivera and her siblings would not have aided PNS in establishing extrinsic fraud, and therefore the trial court did not err in refusing to compel disclosure of that information. We therefore overrule issue six.

The extrinsic fraud analysis is also applicable to PNS's seventh issue. In that issue, PNS contends the trial court erred in refusing to allow PNS to supplement its response to the motion for summary judgment with Tamez's bankruptcy filing, which listed Rachel Rivera as a creditor, because it was evidence of extrinsic fraud. In determining whether the trial court erred in denying a party's request for leave to file a late response or evidence in support of a previously filed response, we employ an abuse of discretion standard. *Carpenter v. Cimarron Hydrocarbons Corp.*, 98 S.W.3d 682, 685 (Tex. 2002). PNS does not really explain how this would be evidence of extrinsic fraud. Nevertheless, based on the previous analysis on extrinsic fraud, such evidence would not have aided PNS in establishing what it claimed constituted extrinsic fraud by Tamez. Accordingly, we overrule this issue as well.

PNS also contends the trial court should not have granted Rivera's motion for summary judgment based on limitations because applying the four-year limitations period to PNS's bill of review deprived PNS of its constitutional right to procedural due process. PNS's argument is

based on its contention that it did not receive notice of the judgment until after the limitations period had expired. We have reviewed PNS's summary judgment motion and responses and cannot see where PNS raised a constitutional challenge to the four-year residual limitations period imposed on a bill of review. "Even constitutional challenges not expressly presented to the trial court by written motion, answer or other response to a motion for summary judgment will not be considered on appeal as grounds for reversal." *City of San Antonio v. Schautteet*, 706 S.W.2d 103, 104 (Tex. 1986) (per curiam); *see also Holcombe v. Reeves County Appraisal Dist.*, 310 S.W.3d 86, 90 (Tex. App.—El Paso 2010, no pet.) (holding constitutional issues must be properly raised in trial court or they are waived); *Birdo v. Ament*, 814 S.W.2d 808, 811 (Tex. App.—Waco 1991, writ denied) (concluding even constitutional errors, such as due process complaints, are waived if not first raised in trial court). However, even if the contention was preserved, we hold there was no due process violation in applying the long-standing four-year statute of limitations to PNS's bill of review. We overrule this issue.

### Construing Untimely Bill of Review as Collateral Attack

Having determined the bill of review was barred by limitations, the question is whether this ends our summary judgment inquiry on the bill of review, i.e., should we simply affirm the summary judgment in favor of Rivera on this basis? *See Defee*, 966 S.W.2d at 722. It would seem so based on the supreme court's holding in *Middleton v. Murff*, 689 S.W.2d 212, 213 (Tex. 1985). In *Middleton*, the supreme court disapproved of the use of the global statement that "[i]f a judgment rendered by a trial court is void it may be set aside by that court at any time." 689 S.W.2d at 213. Generally, only a timely filed bill of review is available to set aside a judgment when the trial court's plenary power has expired. TEX. R. CIV. P. 329b(f); *Middleton*, 689 S.W.2d at 213. However, in *Middleton*, the supreme court recognized an exception to rule

329b(f). 689 S.W.2d at 213. According to the supreme court, the rule's mandate that only a timely filed bill of review is available to set aside a trial court's judgment after the court's plenary power has expired does not apply where the court had no jurisdictional power to render judgment. Importantly, however, the court specifically defined "jurisdictional power" to mean "jurisdiction over the subject matter, the power to hear and determine cases of the general class to which the particular one belongs." *Id.* Any other direct attack on a void judgment must comply with rule 329b(f), i.e, must be an attack by a timely filed bill of review. *See id.*

Accordingly, under *Middleton*, it appears that an untimely bill of review is proper only if there is an absence of subject matter jurisdiction. 689 S.W.2d at 213; *see also Deen v. Kirk*, 508 S.W.2d 70, 71 (Tex. 1974) (original proceeding). Here, there is no absence of subject matter jurisdiction, and therefore, PNS's bill of review action fails as a matter of law based on limitations. It therefore appears our inquiry should end, and summary judgment in favor of Rivera should be affirmed.

However, despite *Middleton*, some courts, including this one have, after determining a direct attack by bill of review lacked merit, construed the unmeritorious bill of review as a collateral attack and reviewed it accordingly. *See, e.g., In re A.G.G.*, 267 S.W.3d 165, 169 (Tex. App.—San Antonio 2008, pet. denied); *Zarate v. Sun Operating Ltd., Inc.*, 40 S.W.3d 617, 620 (Tex. App.—San Antonio 2001, pet. denied); *Tex. Dep't of Transp. v. T. Brown Constructors, Inc.*, 947 S.W.2d 655, 659 (Tex. App.—Austin 1997, writ denied). Therefore, based on our decisions in *A.G.G.* and *Zarate*, we will deem PNS's untimely bill of review a collateral attack and review it accordingly.

Even when reviewed as a collateral attack, we hold PNS's lack of service and improper service contentions do not mandate reversal. As discussed above, the scope of review on a direct

attack is different from the scope of review on a collateral attack. In a direct attack, no presumptions are indulged in favor of valid issuance, service, or return of citations in support of a default judgment. *McKanna*, 388 S.W.2d at 929-30; *Min*, 991 S.W.2d at 499; *Magan*, 727 S.W.2d at 105. However, in a collateral attack, with limited exceptions not applicable here, the challenger must show the judgment is void, not voidable, and must do so based on the face of the judgment. *See Kidd*, 904 S.W.2d at 901 (holding authority to inquire into jurisdiction of court rendering default judgment is limited to examining face of default judgment); *see also Stewart*, 870 S.W.2d at 20 (holding that "[i]n a collateral attack, the judgment under attack is presumed valid."). Given the scope of review applicable to collateral attacks, it is no wonder PNS argues lack of service as if it were bringing a proper direct attack.

PNS contends the trial court erred in denying its motion for summary judgment on the bill of review because for purposes of the default proceeding, the court never acquired personal jurisdiction over PNS due to an absence of service or improper service. PNS argues service was improper because: (1) the return did not specifically state PNS was served through its registered agent; (2) the return is inconsistent and does not clearly indicate the manner of service–mail versus hand delivery; (3) the return does not state service was by certified mail; (4) the return fails to indicate the time service was perfected; (5) the green card does not show the years in which citation was received by the registered agent; and (6) neither the citation, return, or green card are file-stamped to indicate they were on file for ten days before the default judgment was rendered. PNS argues that because there are no presumptions in favor of "valid issuance, service, and return of citation," and it established numerous problems with service, it was entitled to summary judgment. However, because PNS's direct attack fails, and we are reviewing PNS's suit as a collateral attack, PNS must establish the default judgment is void

based solely on the face of the judgment; we cannot consider the extrinsic evidence relied upon by PNS.  *See A.G.G.*, 267 S.W.3d at 169 (holding extrinsic evidence cannot be used to establish absence of jurisdiction;); *Kidd*, 904 S.W.2d at 901 (holding authority to inquire into jurisdiction of court rendering default judgment is limited to examining face of default judgment).

The ability to collaterally attack a judgment is limited because the reviewing court must presume the validity of the judgment, and extrinsic evidence cannot be used to establish an absence of jurisdiction.  *A.G.G.*, 267 S.W.3d at 169.  A collateral attack fails if the judgment contains jurisdictional recitals, even if other portions of the record show a lack of jurisdiction. *Id.*  Here, the default judgment contains the following jurisdictional recitals: "The Plaintiff appeared in person and by and through her attorney of record.  Defendant 'MAC FRUGALS' though duly served with citation of process, has failed to answer herein, thus constituting a default."[7]  The judgment went on to state, with regard to jurisdiction:

> 1.  Plaintiff's Original Petition was filed on April 5, 2000;
>
> 2.  Citation was issued on Defendant "MAC FRUGALS" by serving its registered agent for service of process, Prentice Hall Corporation Systems, 800 Brazos, Austin, Texas 78701, on May 25, 2000, and having the return filed with the Court on May 30, 2000.  A true and correct copy of Plaintiffs' [sic] Original Petition was attached to said citation;
>
> 3.  No answer has been filed by Defendant "MAC FRUGALS" on the first Monday after the expiration of twenty (20) days since service upon said Defendant;
>
> 4.  The return of citation has been on file with the District Clerk for more than (10) days; and

---

[7] In the opening portion of the default judgment, PNS was described as "PNS STORES, INC. D/B/B MAC FRUGAL'S BARGAIN CLOSEOUTS D/B/A MACFRUGALS, INC. (hereinafter identified as 'MAC FRUGALS').

5. To date, no answer has been filed by the Defendant "MAC FRUGALS[;]"

\* \* \*

1. Defendant "MAC FRUGALS" registered agent for service of process was, and is, Prentice Hall Corporation Systems, 800 Brazos, Austin, Texas 78701.

This language establishes the personal jurisdictional basis for the default judgment. Because personal jurisdiction, based on service of process by serving PNS's registered agent, is established on the face of the judgment, PNS's collateral attack fails. *See id.*

PNS submitted a post-submission letter brief in which it argues we must look beyond the face of the judgment in determining whether to reverse the summary judgment, even if their attack is construed as a collateral attack. More specifically, PNS argues this court may look beyond the face of the judgment and rely on other evidence in the record to determine whether the trial court had personal jurisdiction over PNS. In support of its argument, PNS relies on essentially two cases, *Alfonso v. Skadden*, 251 S.W.3d 52 (Tex. 2008) (per curiam) and *Myrick v. Nelson's Legal Investigating & Consulting*, No. 04-08-00174-CV, 2009 WL 1353538 (Tex. App.—San Antonio May 13, 2009, no pet.) (mem. op.). However, we find both cases distinguishable, and hold neither supports PNS's contention.

In *Alfonso*, an ex-husband sought to enforce a child custody provision contained in a default divorce decree that was more than four years old. 251 S.W.3d at 53. His ex-wife claimed the trial court lacked both subject matter and personal jurisdiction to enforce the provision. *Id.* The supreme court looked at the entire record and concluded the trial court lacked *subject matter jurisdiction* because Texas was not the child's home state. *Id.* at 55. However, the supreme court never addressed the issue of personal jurisdiction, nor did it hold that in a

collateral attack courts may look beyond the face of the judgment in determining the existence of *personal jurisdiction*. *Id*. *Alfonso* does not, therefore, support PNS's contention. There is a great difference between an absence of subject matter jurisdiction and an absence of personal jurisdiction.

*Myrick* is similarly distinguishable. *Myrick* involved a Utah default judgment where the appellee placed a lien on the appellant's property in Texas. *Id.* at *1. Thereafter, the appellant filed a lawsuit against the appellee in a Texas court, alleging slander of title and attempting to collaterally attack the Utah court's judgment based on an alleged lack of personal jurisdiction. *Id.* The Texas court granted the appellee's motion for summary judgment. On appeal, this court did not address the collateral attack issue; rather, we held that the "circumstances of this case are not comparable to a no-answer default judgment because [appellee] did not initiate the proceeding to enforce his judgment [in Texas]." *Id.* at *3. We explained that because appellee never filed the Utah judgment in a Texas court, the Utah judgment was not enforceable in Texas, and therefore the appellate timetable for challenging a judgment never began to run. *Id.*; *see Moncrief v. Harvey*, 805 S.W.2d 20, 24 (Tex. App.—Dallas 1991, no writ) (holding that "[t]he appellate timetable starts from the date on which the foreign judgment creditor files the foreign judgment in a Texas court.") Accordingly, the appellant was free to contest personal jurisdiction without a collateral attack. *Myrick*, 2009 WL 1353538, at *3. This court never addressed whether it was permissible to look beyond the face of the judgment in a collateral attack because there was no need for a collateral attack under the circumstances presented in *Myrick*. *See id.*

Accordingly, we hold we may not look beyond the face of the judgment in determining whether the trial court had personal jurisdiction over PNS. *See A.G.G.*, 267 S.W.3d at 169 (holding extrinsic evidence cannot be used to establish absence of jurisdiction;); *Kidd*, 904

S.W.2d at 901 (holding authority to inquire into jurisdiction of court rendering default judgment is limited to examining face of default judgment). We therefore overrule PNS's second issue.

### *Unliquidated Damages*

PNS also contends the trial court erred in denying its motion for summary judgment on the bill of review because Rivera had no competent proof of unliquidated damages to support the default judgment. As previously discussed, because PNS's bill of review was untimely and there was an absence of evidence of extrinsic fraud, its attack must be considered collateral if it is to be considered at all. *See Zarate*, 40 S.W.3d at 620. To prevail on its collateral attack, PNS must show the judgment is void. *See A.G.G.*, 267 S.W.3d at 169; *see also Austin Indep. Sch. Dist. v. Sierra Club*, 495 S.W.2d 878, 881 (Tex. 1973) (holding judgment of court of general jurisdiction is not subject to collateral attack in court of equal jurisdiction unless void). A judgment is void only where it is shown the trial court had no jurisdiction of the parties or property, no jurisdiction of the subject matter, no jurisdiction to enter the particular judgment, or no capacity to act as a court. *Browning v. Placke*, 698 S.W.2d 362, 363 (Tex. 1985) (citing *Cooper v. Tex. Gulf Indus., Inc.*, 513 S.W.2d 200, 204 (Tex. 1974)). "All errors other than jurisdictional deficiencies render the judgment merely voidable." *Browning*, 698 S.W.2d at 363. PNS's claim of an absence of evidence of damages is not one of the jurisdictional defects described by *Browning*. *See id.* Accordingly, any error with regard to proof of damages would render the judgment voidable, not void, and therefore will not sustain a collateral attack. *See A.G.G.*, 267 S.W.3d at 169; *see also Austin Indep. Sch. Dist.*, 495 S.W.2d at 881. Accordingly, this issue is overruled.

### *Denial of Motion to Supplement Summary Judgment Response*

In issues seven and eight, PNS contends the trial court erred in refusing to allow PNS to supplement its response to the motion for summary judgment with (1) Tamez's bankruptcy

filing, and (2) the deposition of James Karel, one of PNS's original attorneys. We have already discussed issue seven, which relates to Tamez's bankruptcy filing, overruling it because such evidence would not support a finding of extrinsic evidence as a matter of law. However, issue seven, as well as issue eight, also fails because PNS failed to establish good cause.

In determining whether the trial court erred in denying a party's request for leave to file a late response or evidence in support of a previously filed response, we employ an abuse of discretion standard. *Carpenter*, 98 S.W.3d at 685. A motion for leave to file a late summary judgment response or evidence in support thereof should be granted when the nonmovant establishes good cause by showing the failure to timely file (1) was not intentional or the result of conscious indifference, and (2) would cause no undue delay or otherwise injure the summary judgment movant. *Carpenter*, 98 S.W.3d at 688.

PNS argues the trial court should have allowed it to supplement its summary judgment response with Tamez's bankruptcy filings and Karel's deposition because those documents were not available before the date of the summary judgment hearing. This is insufficient to establish the first prong of the good cause inquiry, i.e., failure to supplement not intentional or result of conscious indifference, because PNS knew, per the docket control order, when its summary judgment response was due and when the summary judgment hearing was set, and apparently knew it needed these documents but would not have an exemplified copy of Tamez's bankruptcy filings or a transcript of Karel's deposition before the hearing or within the deadline for filing its response. Yet, PNS did not file a motion for continuance. *See Tenneco, Inc. v. Enterp. Prods. Co.*, 925 S.W.2d 640, 647 (Tex. 1996) (holding party unprepared for summary judgment must request continuance ); *Gabaldon v. Gen. Motors Corp.*, 876 S.W.2d 367, 369 (Tex. App.—El Paso 1993, no writ) (same). Moreover, there is no evidence about what steps, if any, PNS took

to obtain the documents before its response was due so as to establish it was not acting intentionally or with conscious indifference. Finally, PNS did not even file its motion to supplement until days after the summary judgment hearing, after the trial court granted Rivera's motion for summary judgment.

Even if we assume PNS established the first prong based on the unavailability of the documents, PNS does not argue nor did it provide any evidence that the supplementation would not cause undue delay or injure Rivera. It is clear that supplementation would have caused undue delay because the motion to supplement was not filed until the day the trial court granted Rivera's motion for summary judgment. If the trial court had permitted supplementation, it would have had to reconsider its ruling in light of the new summary judgment evidence. Accordingly, we hold PNS failed to meet its burden to establish good cause, and therefore the trial court did not err in denying PNS's motion to leave to late-file summary judgment evidence in support of the response. We overrule issues seven and eight.

## CONCLUSION

Based on the foregoing, we overrule all of PNS's issues and affirm the trial court's judgment.

Marialyn Barnard, Justice