**Opinion issued July 10, 2014.**



In The

# Court of Appeals

For The

# First District of Texas

_____

### NO. 01-13-00928-CV

_____

**MARIAN E. BRITTON, INDIVIDUALLY AND AS NEXT FRIEND FOR THE UNBORN AND UNASCERTAINED DESCENDANTS OF MARIAN E. BRITTON, AND GEORGE L. MURRAY, TRUSTEE OF THE MARIAN E. BRITTON TRUST, Appellants**

**V.**

**J.P. MORGAN CHASE, N.A., Appellee**

---

**On Appeal from the Probate Court No. 4**
**Harris County, Texas**
**Trial Court Case No. 297,493-401**

---

### MEMORANDUM OPINION

This appeal arises from the denial of a bill of review regarding an estate closed in 2002. Because the plaintiffs delayed in seeking the bill of review until

after the four-year statute of limitations had run and they have not demonstrated extrinsic fraud, which would toll the statute of limitations, we affirm.

## Background

Marian M. Britton died testate in 1998, leaving behind an estate that included substantial real estate and mineral assets. JP Morgan Chase Bank is the successor to Chase Bank of Texas, N.A., which was appointed as administrator of the estate.

Marian M. Britton's will made provisions for her three children—James L. Britton, III, George M. Britton, and Marian E. Britton. It also established a trust for the benefit of her daughter—the Marian E. Britton Trust.[1] The Museum of Fine Arts, Houston asserted a competing interest in the estate's property.

Litigation ensued among the children, the museum, a number of familial trusts, and some of the other heirs. To resolve that litigation, the three children and the museum entered into a mediated settlement agreement in 1999.

The settlement agreement called for Marian to receive $2,256,500 in cash, "the mineral interests owned by [decedent's] estate, and as listed on Exhibit A attached hereto," and certain jewelry. It required that the distribution to Marian be

---

[1] For clarity, we will refer to Marian M. Britton as "decedent," James L. Britton, III, as "James," George M. Britton as "George," Marian E. Britton as "Marian," and the Marian Edith Britton Trust as "Marian's Trust." George Murray, who was later appointed trustee of Marian's Trust will be referred to as "Murray" or "the Trustee."

2

made "on or before September 15, 1999" and provided, if such distribution was not timely made, interest would accrue at the rate of $350 per day until Marian received at least $2,000,000. James and George, meanwhile, were each to receive "50% of the rest of all assets owned by Mrs. Britton's estate" and 50% of the assets held in a pair of existing trusts.

Although Chase was not party to the settlement agreement, the agreement included a release of its predecessor, Chase Bank of Texas, National Association. Specifically, James, George, and Marian each released Chase

> and any other legal or accounting professionals who performed services related to [decedent's] estate from any and all claims, causes of action, demands, and liability, of any kind whatsoever, including but not limited to undue influence, breach of fiduciary duty, tortious interference with inheritance rights, contract, tort, and negligence claims, which such person . . . might have with respect to . . . Chase.

The judgment on this settlement agreement, which orders Chase to distribute the estate's assets, includes the statement that "Chase never served as Executor or Trustee of any will of the Decedent, has no duty or standing to inquire into the nature or merits of the [Settlement] Agreement, and declines to serve as a fiduciary under any will of the Decedent . . . ." It further released Chase from "all duties and liabilities with respect to any will of [decedent] and any trust created under any will of [decedent]" and states that "Chase has no standing or duty to inquire into the nature or terms of the Agreement."

The judgment awarded Marian the jewelry to which she was entitled under the settlement agreement but specified that the $2,256,500 in cash and a list of specific mineral interests, identified in Exhibit C to the judgment, be delivered to Marian's Trust. The judgment also provided that James and George would each receive equal, undivided, one-half interests in "[a]ll remaining properties of the Estate."

Exhibit C to the judgment, which identifies the mineral interests to be transferred into Marian's Trust was drafted by Marian's legal counsel and specified 19 mineral interests to be delivered to Marian's Trust. The cover letter from Mirian's counsel explains the content of the exhibit as follows:

> Paragraph 19(D)(2). I am enclosing a proposed Exhibit "C" to be attached to the proposed Judgment and referred to in this paragraph instead of Exhibit "A" to the Agreement. The purpose of Exhibit "C" is to clarify that Marian is receiving all of the Estate's mineral interests (except for the mineral interest in the real property which goes to [James] and George). The Agreement provides for this but Exhibit "A" to the Agreement details only the July production from certain mineral interests. Paragraph D(2) of the Judgment should be revised to identify the mineral interests of the Estate as those listed on Exhibit "C" to the Judgment.

The probate court entered the agreed judgment. All parties, including Marian and Murray, the trustee for her trust, signed the agreed judgment. After the probate court entered judgment, Chase distributed the mineral interests identified in Exhibit C to the judgment to Murray in his capacity as trustee of Marian's Trust. Chase filed a series of annual accounts with the probate court, then filed an Account for

4

Final Settlement and Application for Final Distribution (Final Account). A citation was issued and posted announcing the filing of the Final Account and the hearing to be held on it. Marian and Murray concede that this citation was sufficient to give them notice of the Final Account.

Two and a half months later, Chase filed an Amended Account for Final Settlement and Application for Final Distribution (Amended Final Account). Murray received a copy of the Amended Final Account via certified mail, return receipt requested. But neither Marian nor Murray were served citation of the Amended Final Account. The probate court entered an order in 2002 approving the Amended Final Account, finding that "due and proper notice has been given to all persons entitled thereto." Chase then applied for closure of the administration and discharge of the bank as administrator, which the probate court granted.

More than five years later, in 2007, Marian and Murray, as Trustee of Marian's Trust, filed an original petition in the probate court against James, George, and Chase, claiming that the defendants had violated the 1999 agreed judgment and seeking to enforce the judgment. At Marian and Murray's request, James and George were ultimately dismissed.

In 2010, Marian and Murray amended their petition to seek a bill of review of the probate court's 2002 orders approving the Amended Final Account, closing the estate, and discharging Chase as administrator. In response to Chase's statute

of limitations defense, Marian and Murray alleged that Chase committed extrinsic fraud in the form of false statements in the bank's Second Annual Account, Amended Final Account, the distribution of mineral assets to James and George, and failing to serve Marian and Murray with process in connection with the Amended Final Account. In 2013, however, Marian and Murray amended their petition again and removed the extrinsic fraud allegations, while continuing to seek a bill of review of the probate court's 2002 orders.

Marian, Murray, and Chase submitted extensive briefing on the issue of the bill of review. After a hearing on the matter, the probate court denied the bill. Marian and Murray appeal.

### Standard of Review

A litigant may attach a void judgment directly or collaterally. *PNS Stores, Inc. v. Rivera*, 379 S.W.3d 267, 271–72 (Tex. 2012). A bill of review is a direct attack on a judgment, seeking to correct, amend, modify or vacate the judgment. *Id.* A bill of review must be brought within four years of the judgment's rendition. TEX. CIV. PRAC. & REM. CODE ANN. § 16.051 (West 2008) (residual statute of limitations period); *PNS Stores*, 379 S.W.3d at 275. The denial of a petition for a bill of review is appealable. *See e.g.*, *In re Green*, No. 14-11-01054-CV, 2011 WL 6581379, at *1 (Tex. App.—Houston [14th Dist.] Dec. 20, 2011, orig. proceeding) (mem. op.); *Manley v. Parsons*, 112 S.W.3d 335, 337 (Tex. App.—Corpus Christi

2003, pet. denied). We review such a denial under an abuse of discretion standard. *Manley*, 112 S.W.3d at 337; *Nguyen v. Intertex, Inc.*, 93 S.W.3d 288, 293 (Tex. App.—Houston [14th Dist.] 2002, no pet.); *Interaction, Inc. v. State*, 17 S.W.3d 775, 778 (Tex. App.—Austin 2000, pet. denied).

"In reviewing the grant or denial of a bill of review, every presumption is indulged in favor of the court's ruling, which will not be disturbed unless it is affirmatively shown that there was an abuse of judicial discretion." *Nguyen*, 93 S.W.3d at 293; *Interaction*, 17 S.W.3d at 778. When the parties have not requested and the probate court has not entered findings of fact and conclusions of law, we affirm the probate court's judgment on any legal theory supported by the evidence, and we presume that the court found the necessary facts in support of its judgment. *Roberson v. Robinson*, 768 S.W.2d 280, 281 (Tex. 1989); *Nguyen*, 93 S.W.3d at 293; *EZ Pawn Corp. v. Gonzalez*, 921 S.W.2d 320, 322 (Tex. App.—Corpus Christi 1996, writ denied).

"Although it is an equitable proceeding, the fact that an injustice has occurred is not sufficient to justify relief by bill of review." *Wembley Inv. Co. v. Herrera*, 11 S.W.3d 924, 927 (Tex. 1999); *Nguyen*, 93 S.W.3d at 293. "Generally, bill of review relief is available only if a party has exercised due diligence in pursuing all adequate legal remedies against a former judgment and, through no fault of its own, has been prevented from making a meritorious claim or defense by

7

the fraud, accident, or wrongful act of the opposing party." *Wembley*, 11 S.W.3d at 927. "If legal remedies were available but ignored, relief by equitable bill of review is unavailable." *Id.*

To obtain a bill of review, a litigant must plead and prove (1) a meritorious defense to the cause of action alleged to support the judgment (2) that he was prevented from making by the fraud, accident, or wrongful act of his opponent, (3) unmixed with any fault or negligence of his own. *Mabon Ltd. v. Afri-Carib Enters., Inc.*, 369 S.W.3d 809, 812 (Tex. 2012); *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751–52 (Tex. 2003); *Alexander v. Hagedorn*, 226 S.W.2d 996, 998 (Tex. 1950).

Additionally, the bill of review must be brought within the four-year statute of limitations unless the pleader establishes extrinsic fraud by the other party. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.051; *PNS Stores*, 379 S.W.3d at 275.

**Mirian and Murray's Theory to Attack Prior Judgment**

In their original brief, Marian and Murray appear to argue that the facts surrounding the presentation of the Amended Final Account relieve them of their burden to prove all three elements necessary to prevail on a bill of review, based on their contention that they were "not served with citation on [Chase's] Amended Account for Final Settlement" and that the lack of service raises "constitutional

8

due process" concerns. Marian and Murray have clarified their position through a reply brief, explaining their assertion of error and basis for appeal as follows:

> The lack of jurisdiction complained of is not a lack of personal jurisdiction as suggested by [Chase], nor is the complaint a collateral attack as [Chase] has argued. [Marian and Murray] brought a direct attack on a void order to have it set aside . . . . The extrinsic fraud in which [Chase] engaged tolled the statute of limitations for [Marian and Murray's] Bill of Review, fraud that was pleaded and proved at the trial court level.

Thus, the question is whether Marian and Murray have proven extrinsic fraud to avoid the four-year statute of limitations that they admit applies to their bill of review directly attacking a prior judgment alleged to be void.

### Statute of Limitations

A bill of review must be brought within four years of the judgment that it attacks. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.051; *PNS Stores*, 379 S.W.3d at 275 (recognizing equitable nature of claim and application of TEX. CIV. PRAC. & REM. CODE ANN. § 16.051 to bills of review). When a litigant can prove extrinsic fraud, however, it may bring a direct attack in the form of a bill of review after the four-year statute of limitations would otherwise have expired. *PNS Stores*, 379 S.W.3d at 275.

"Extrinsic fraud is fraud that denies a litigant the opportunity to fully litigate at trial all the rights or defenses that could have been asserted." *Id.* "It occurs when a litigant has been misled by his adversary by fraud or deception, or was denied

9

knowledge of the suit." *Id.* In other words, it "is conduct that prevents a real trial upon the issues involved." *Montgomery v. Kennedy*, 669 S.W.2d 309, 313 (Tex. 1984). By contrast, "intrinsic fraud . . . is inherent in the matter considered and determined in the trial where the fraudulent acts pertain to an issue involved in the original action, or where the acts constituting the fraud were, or could have been litigated therein." *Id.* (citation and internal quotation marks omitted). "Included in intrinsic fraud are fraudulent instruments, perjured testimony, or any matter which was actually presented to and considered by the trial court in rendering the judgment assailed." *Id.* Unlike extrinsic fraud, intrinsic fraud will not toll the four-year statute of limitations for bringing a bill of review. *King Ranch*, 118 S.W.3d at 752.

Marian and Murray filed their suit to challenge the probate court's order in 2007—more than five years after the probate court entered its orders approving the Amended Final Account, closing the estate, and discharging Chase as the administrator. Because Marian and Murray brought their suit more than five years after the probate court's order, the statute of limitations had expired, and Marian and Murray may attack the order directly only by proving extrinsic fraud. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.051; *PNS Stores*, 379 S.W.3d at 272, 275.

Marian and Murray's original petition did not request a bill of review, though the petition was later amended to include the request and to assert an

10

allegation of extrinsic fraud. Marian and Murray amended their petition again in 2013 and removed the explicit reference to extrinsic fraud. This last version of the petition, the Fourth Amended Original Petition to Enforce Final Judgment, was Marian and Murray's live pleading that was before the probate court when it denied the bill of review. Thus, unless the live pleading contained allegations of extrinsic fraud that were simply not labeled as such, Marian and Murray have waived those claims, and extrinsic fraud cannot operate to suspend the statute of limitations. TEX. R. CIV. P. 65 ("Unless the substituted instrument shall be set aside on exceptions, the instrument for which it is substituted shall no longer be regarded as a part of the pleading in the record of the cause . . . ."); *Drake Ins. Co. v. King*, 606 S.W.2d 812, 817 (Tex. 1980); *State v. Tamminga*, 928 S.W.2d 737, 740 (Tex. App.—Waco 1996, no writ) ("[W]hen a plaintiff fails to include in his amended petition a cause of action that he had included in a previously filed petition, that cause of action . . . is no longer before the trial court.").

Chase argues that Marian and Murray waived their right to claim extrinsic fraud for precisely these reasons. In response, Marian and Murray argue that their live pleading contains allegations that the bank improperly and clandestinely distributed estate assets to James and George, the Amended Final Account contained language not in the agreed judgment, and Chase concealed these facts by failing to serve citation of the Amended Final Account. Thus, they argue that they

11

have pleaded extrinsic fraud. But even assuming that Marian and Murray's pleading can be read to assert a claim of extrinsic fraud, the allegations do not support the conclusion that the fraud, if any, was extrinsic in nature.

Marian and Murray make two claims of fraud. First, they argue that Chase presented the probate court with a fraudulent instrument—the Amended Final Account—which varied from the settlement agreement entered into by the three children and the museum. Second, they argue that Chase concealed the transfer of estate assets to James and George. Both of these allegations are examples of intrinsic fraud.

The assets to which Marian and the Trust were entitled were set out in an agreed judgment, which they both signed nearly eight years before bringing this suit. To the extent that they claim that the Amended Final Account misrepresents the disposition of assets that had been described in the agreed judgment, Marian and Murray are alleging an inconsistency between two documents that were before the probate court when it entered its order. Presenting a fraudulent or non-conforming document that all parties are given the opportunity to examine is an example of intrinsic fraud because the document is "actually presented to and considered by the trial court" and does not involve the type of fraud that would "prevent[] a real trial upon the issues involved." *Montgomery*, 669 S.W.2d at 313

(instruments presented to the trial court alleged to be fraudulent raise issue of intrinsic fraud, not extrinsic fraud).

Regarding the allegation that Chase concealed the transfer of estate assets to James and George, Marian and Murray contend that such concealment is extrinsic in nature. As support, they cite *Valdez v. Hollenbeck*, 410 S.W.3d 1 (Tex. App.—San Antonio 2013, pet. filed), in which the appellate court held that fraudulent concealment of an asset is extrinsic fraud. 410 S.W.3d at 12 (citing *Montgomery*, 669 S.W.2d at 313). But as the *Valdez* court explained, "[t]he controlling question is always whether the alleged fraud prevented the party from knowing about and presenting his legal rights at trial." *Id.* at 312 (quoting *Montgomery*, 669 S.W.2d at 314). The fraud alleged here would not have had that effect.

Marian and Murray do not allege that Chase concealed assets; they allege only that the bank concealed its transfer of assets not specifically listed in Exhibit C to the agreed judgment. That is, they argue that the bank concealed from Marian and Murray transfers of unlisted assets to James and George, although the judgment called for "all remaining properties of the Estate" not specifically identified in the judgment to be distributed to James and George. They contend that this concealment prevented them from fully litigating their rights. We disagree given that Marian's counsel drafted Exhibit C to the judgment, identifying the mineral interests to be transferred into Marian's Trust. Chase responded to the draft

by voicing a "concern[] about the insufficiency of the mineral descriptions" and "suggest[ing] that greater detail be obtained." Marian and Murray elected not to revise Exhibit C, although the judgment specified that "all remaining" properties would go to James and George.

Moreover, Marian and Murray knew all the claims they had against the estate when they signed the agreed judgment in 1999, and they had notice of the bank's desire to close the administration of the estate when they were served citation of the Final Account and Murray was served by mail with the Amended Final Account in 2002. Through these documents, they also had notice of the assets that had been distributed or purportedly distributed at each of these points in time, as well as the assets that remained in the estate.

Marian and Murray do not articulate—and we do not see—how they were fraudulently prevented from asserting their claims on the estate while it was still open. *See Wembley*, 11 S.W.3d at 927. On the contrary, because the allegations of fraud relate to acts that were or could have been addressed during the estate's administration, Marian and Murray have pleaded intrinsic fraud, not extrinsic fraud. *Montgomery*, 669 S.W.2d at 313.

We hold that Marian and Murray have not pleaded or proved extrinsic fraud and therefore are not entitled to tolling of the statute of limitations. Thus, they may

not attack the probate court's orders directly with a bill of review. *PNS Stores*, 379 S.W.3d at 275; *Frost Nat'l Bank*, 315 S.W.3d at 504.

Because limitations bar the application for a bill of review, we do not reach the parties' arguments regarding its merits.

## Conclusion

Marian and Murray have failed to demonstrate extrinsic fraud to toll the four-year statute of limitations that applies to their direct attack of the probate court's orders. *Frost Nat'l Bank*, 315 S.W.3d at 504. Therefore, Marian and Murray were not entitled to a bill of review, and the trial court did not err in denying their request. Accordingly, we affirm the order of the probate court.


Harvey Brown
Justice

Panel consists of Chief Justice Radack and Justices Higley and Brown.