# IN THE SUPREME COURT OF TEXAS

════════════

No. 10-1028

════════════

PNS STORES, INC., D/B/A MACFRUGAL'S BARGAIN CLOSEOUTS D/B/A/ MACFRUGALS, INC., PETITIONER,

v.

ANNA E. RIVERA AS NEXT FRIEND FOR RACHAEL RIVERA, RESPONDENT.

══════════════════════════════════════════════════════

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FOURTH DISTRICT OF TEXAS

══════════════════════════════════════════════════════

**Argued January 11, 2012**

JUSTICE GUZMAN delivered the opinion of the Court.

In this appeal from a summary judgment dismissal of a direct and collateral attack, the petitioner, PNS Stores, Inc., contends the underlying judgment is void and subject to collateral attack at any time. In this regard, PNS argues that the trial court rendering the default judgment never acquired personal jurisdiction over it because the service of process was defective. Alternatively, PNS argues that its adversary's extrinsic fraud prevented it from learning about the underlying

default judgment and that limitations was thereby tolled, making its direct attack through a bill of review timely.[1]

The court of appeals affirmed the summary judgment, concluding that the underlying default judgment was not void and that there was no evidence of extrinsic fraud that would toll limitations. 335 S.W.3d 265, 277. We agree with the court below that the alleged defects in service of process were not sufficient to render the default judgment void, but we hold that summary judgment was improperly granted because there is some evidence of extrinsic fraud. Accordingly, we reverse the court of appeals' judgment and remand the case to the trial court for further proceedings.

## I. Factual and Procedural Background

On December 29, 1998, Rachael Rivera filed suit against PNS Stores, Inc. in state court for injuries she allegedly sustained when she slipped and fell at a MacFrugal's Bargain Closeouts Store, owned by PNS. PNS removed the case to federal court, and after discovery, the federal district court granted PNS's motion for summary judgment and dismissed the case "without prejudice on January 7, 2000."[2] No appeal was taken.

---

[1] A bill of review is an independent equitable proceeding brought by a party to a former action who seeks to set aside a judgment that is no longer subject to challenge by appeal. *Caldwell v. Barnes*, 975 S.W.2d 535, 537 (Tex. 1998). The residual four-year statute of limitations applies to bills of review. *Id*. at 538 (citing TEX. CIV. PRAC. & REM. CODE § 16.051).

[2] The federal district court granted summary judgment on the ground that Rivera had not raised a genuine issue of material fact to show PNS had actual or constructive knowledge of the dangerous condition in its store, an essential element of her premises-liability claim.

2

Three months later, Rivera, through her attorney Oscar Tamez, sued again in state court for the same slip and fall claims,[3] serving PNS through its registered agent for service of process, Prentice Hall Corporation. PNS failed to answer, and Rivera obtained a no-answer default judgment for $1,480,677.74 plus post-judgment interest. Rivera then waited six years to abstract the judgment and about nine years to attempt execution.[4] By then, the judgment had more than doubled to $3,513,070.55. The writ of execution was served at the PNS corporate headquarters in Columbus, Ohio and at its place of business in San Antonio on February 10, 2009.

Thirteen days later, PNS filed a bill of review seeking to set aside the default judgment and quash the writ. After limited discovery, both Rivera and PNS moved for summary judgment. Rivera moved for summary judgment based on the four-year statute of limitations applicable to a bill of review. In its summary judgment motion, PNS argued that the default judgment was barred by res judicata[5] and void due to errors in service of process. Alternatively, PNS argued that if the judgment was merely voidable, its bill of review was nonetheless timely filed because its adversary's extrinsic fraud tolled limitations.

---

[3] Other than a modified date, Rivera's re-filed state court pleadings were identical to her initial state court pleadings that PNS had prevailed against in federal court.

[4] Between the time the judgment was taken and executed, Tamez was disbarred and filed for bankruptcy, listing Rivera as a creditor. Rachael Rivera signed a general power of attorney in favor of her daughter, Anna Rivera, in 2005 and was found *non compos mentis* early in this bill of review action.

[5] PNS had obtained a *nunc pro tunc* order from the federal district court stating that "the Court's ruling was clearly an adjudication of Plaintiff's claims on the merits and the words 'without prejudice' were obviously a clerical mistake." Rivera appealed, the Fifth Circuit affirmed, *Rivera v. PNS Stores, Inc.*, 647 F.3d 188, 202 (5th Cir. 2011), and the United States Supreme Court denied certiorari, *Rivera v. PNS Stores, Inc.*, 132 S.Ct. 1741 (2012).

The trial court granted Rivera's motion for summary judgment and denied PNS's. PNS appealed. The court of appeals affirmed the summary judgment, concluding that: (1) PNS's attack was a direct attack; (2) PNS's only possible means of direct attack was by bill of review that would be barred by limitations unless there was evidence of extrinsic fraud sufficient to toll the bill's four-year limitations period; and (3) there was no evidence of extrinsic fraud.[6] 335 S.W.3d 265, 275–77.

## II. Analysis

PNS argues the court of appeals erred in affirming Rivera's summary judgment because (1) defects in service rendered the default judgment void, and therefore assailable at any time, and (2) even if the judgment was merely voidable, the summary judgment was nevertheless erroneous because fact issues remained regarding the existence of extrinsic fraud sufficient to toll the bill of review's limitations period. Although we disagree that the alleged defects in service render the default judgment void, we agree there is some evidence of extrinsic fraud sufficient to raise a fact issue about whether PNS's bill of review is barred by limitations.

### A. Void and Voidable Judgments

Because there is some inconsistency in our state's jurisprudence concerning important distinctions between void and voidable judgments and direct and collateral attacks, we begin our analysis with a discussion of clarifying principles. It is well settled that a litigant may attack a void judgment directly or collaterally, but a voidable judgment may only be attacked directly. *Hagen v. Hagen*, 282 S.W.3d 899, 902 (Tex. 2009) (holding that a divorce decree must be "void, not voidable,

---

[6] The court of appeals held that the federal court's corrected judgment *nunc pro tunc*, *see supra* n.6, did not render the default judgment void because res judicata and collateral estoppel are affirmative defenses that constitute pleas in bar, not pleas to the jurisdiction. 335 S.W.3d 265, 274.

for a collateral attack to be permitted"); *Ramsey v. Ramsey*, 19 S.W.3d 548, 552 (Tex. App.—Austin 2000, no pet.). A direct attack—such as an appeal, a motion for new trial, or a bill of review—attempts to correct, amend, modify or vacate a judgment and must be brought within a definite time period after the judgment's rendition.[7] A void judgment, on the other hand, can be collaterally attacked at any time. *In re E.R.*, __ S.W.3d __, __ (Tex. 2012). A collateral attack seeks to avoid the binding effect of a judgment in order to obtain specific relief that the judgment currently impedes. *Browning v. Prostok*, 165 S.W.3d 336, 346 (Tex. 2005). After the time to bring a direct attack has expired, a litigant may only attack a judgment collaterally.

The distinction between void and voidable judgments is critical when the time for a direct attack has expired. Before then, the distinction is less significant because—whether the judgment is void or voidable—the result is the same: the judgment is vacated.[8] We have described a judgment as void when "the court rendering judgment had no jurisdiction of the parties or property, no jurisdiction of the subject matter, no jurisdiction to enter the particular judgment, or no capacity to act." *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 863 (Tex. 2010) (quoting *Browning*, 165 S.W.3d at 346). Some confusion persists, however, over collateral attacks premised on the absence

---

[7] Our Rules of Civil and Appellate Procedure and the Texas Civil Practice and Remedies Code define the limitations periods for direct attacks. *See* TEX. R. CIV. P. 329b(a) (stating that "[a] motion for new trial, if filed, shall be filed prior to or within thirty days after the judgment or other order complained of is signed"); TEX. R. APP. P. 26.1(a) (stating that generally, a notice of appeal must be filed within thirty days after the judgment is signed); TEX. R. APP. P. 26.1(c) (explaining that "in a restricted appeal, the notice of appeal must be filed within six months after the judgment or order is signed"); TEX. CIV. PRAC. & REM. CODE § 16.051 (a bill of review is governed by the residual four-year limitations period).

[8] However, a court's precision in discussing the judgment as void or voidable is important in order to avoid engendering confusion when the distinction is material. Thus, regardless of when the challenge is asserted, if a party challenges a judgment as void, the first inquiry should necessarily be whether the alleged defect renders the judgment void or merely voidable.

of personal jurisdiction over a party. *See, e.g.*, *Skadden v. Alfonso*, 217 S.W.3d 611, 619–20 (Tex. App.—Houston [14th Dist.] 2006) (noting "dicta" from this Court that courts may allow collateral attack if defendant is not served with process, but concluding that because *McEwen v. Harrison*, 345 S.W.2d 706 (Tex. 1961), had not been overruled or disapproved, the court was bound to follow it), *rev'd on other grounds*, 251 S.W.3d 52 (Tex. 2008) (per curiam).

This confusion can be traced to our decision in *McEwen*. *McEwen* purported to distinguish the absence of personal jurisdiction from a lack of subject matter jurisdiction, observing that a default judgment rendered by a court without subject matter jurisdiction would be void whereas a judgment rendered by a court lacking personal jurisdiction over the parties might only be voidable. 345 S.W.3d at 710 (suggesting that the bill of review was the exclusive method to vacate a default judgment allegedly void for "want of service, or of valid service, of process"); *see also Deen v. Kirk*, 508 S.W.2d 70, 72 (Tex. 1974) (noting that *McEwen* was concerned about "jurisdiction over the subject matter . . . not . . . jurisdiction over the parties"). To the extent that *McEwen* may be read to foreclose a collateral attack on a judgment based on the failure to serve a party with notice, it has been overruled by *Peralta v. Heights Medical Center, Inc.*, 485 U.S. 80 (1988). *E.R.*, __ S.W.3d at ___.

In *Peralta*, the United States Supreme Court held that "a judgment entered without notice or service is constitutionally infirm," and some form of attack must be available when defects in personal jurisdiction violate due process. 485 U.S. at 84. The Court stated, "'[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under the circumstances, to apprise interested parties of the pendency of the action . . . .'" *Id*. (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

6

Thus, the "[f]ailure to give notice violates 'the most rudimentary demands of due process of law.'" *Id*. (quoting *Armstrong v. Manzo*, 380 U.S. 545, 550 (1965)). In light of *Peralta*, we hold that a judgment may also be challenged through a collateral attack when a failure to establish personal jurisdiction violates due process.

Turning to the case at hand, PNS argues that defects in service prevented the trial court from acquiring personal jurisdiction over it and asserts that the citation: (1) fails to list the exact time service was performed; (2) fails to state that PNS was served through its registered agent; (3) states that Prentice Hall was served "VIA USPS" as well as "in person;" (4) does not state that service was by certified mail; (5) does not recite that Prentice Hall was served by registered or certified mail; and (6) lacks any proof that it was on file for ten days preceding the default judgment. *See generally* Tex. R. Civ. P. 106, 107. PNS concludes that the default judgment is void and therefore must be set aside because of these defects. Rivera counters that the alleged defects do not create a jurisdictional problem but that, in any event, the Court may not look beyond the jurisdictional recitals on the face of the judgment to determine whether the trial court lacked jurisdiction.

Although we do not agree that we must confine our review to the face of the judgment, we nevertheless conclude that these asserted defects in service do not render the default judgment void. When attacked collaterally, a judgment is presumed valid. *Stewart v. USA Custom Paint & Body Shop, Inc.*, 870 S.W.2d 18, 20 (Tex. 1994). But that presumption disappears when the record establishes a jurisdictional defect. *Alfonso*, 251 S.W.3d at 55 (holding that "[t]he presumption supporting judgments does not apply when the record affirmatively reveals a jurisdictional defect").

7

Accordingly, although we presume Rivera's default judgment is valid, we may look beyond its face to determine whether the record affirmatively demonstrates that the trial court lacked jurisdiction.

The record affirmatively demonstrates a jurisdictional defect sufficient to void a judgment when it either: (1) establishes that the trial court lacked subject matter jurisdiction over the suit; or (2) exposes such personal jurisdictional deficiencies as to violate due process.[9] Here, PNS filed its attack outside the bill of review's four-year statute of limitations period and its complaints amount to no more than allegations of improper service. We must therefore determine whether PNS's complaints rise to the level of a due process violation that would render the default judgment void and subject to collateral attack. The defects PNS identifies are technical in nature. After *Peralta*, Texas courts of appeals have correctly distinguished between technical defects in service and a complete failure or lack of service, concluding that only the latter violates due process. *Compare Wagner v. D'Lorm*, 315 S.W.3d 188, 194 (Tex. App.—Austin 2010, no pet.) (construing an attack as collateral where a complete lack of service was alleged),[10] *with Layton v. Nationsbanc Mortg. Corp.*, 141 S.W.3d 760, 763 (Tex. App.—Corpus Christi 2004, no pet.) (holding that improper service alone does not render a judgment void).[11] This distinction strikes a reasonable balance between the need for

---

[9] *Alfonso*, 251 S.W.3d at 55; *see Peralta*, 485 U.S. at 84–85; *State Mortg. Corp. v. Ludwig*, 48 S.W.2d 950, 954 (Tex. 1932) ("'The foundation of the rule that judgments of a court of competent jurisdiction are attended with a presumption of absolute verity, is the fact that the parties have been properly brought into court and given an opportunity to be heard upon the matters determined. But the foundation falls, and the rule of verity ceases, when it affirmatively appears from the record that the judgment adjudicated and determined matters upon which the parties were not heard.'" (quoting *Hurr v. Davis*, 193 N.W. 943, 944 (Minn. 1923))).

[10] *See also Mapco, Inc. v. Carter*, 817 S.W.2d 686, 687 (Tex. 1991).

[11] *See also Kendall v. Kendall*, 340 S.W.3d 483, 503–04 (Tex. App.—Houston [1st Dist.] 2011, no pet.); *In re Ocegueda*, 304 S.W.3d 576, 579–80 (Tex. App.—El Paso 2010, pet. denied); *In re D.L.S.*, No. 05-08-00173-CV, 2009 WL 1875579, at *3 n.2 (Tex. App.—Dallas July 1, 2009, no pet.).

finality of judgments[12] and the requirement that the power underlying judicial authority must be based on a litigant's fair opportunity to be heard.

PNS nevertheless argues that a default judgment must be vacated when the prevailing party fails to strictly comply with statutory notice provisions. *See, e.g.*, *Wilson v. Dunn*, 800 S.W.2d 833, 836 (Tex. 1990). But the cases on which it relies simply reiterate the strict compliance requirement in the context of a direct attack on a default judgment. *See, e.g.*, *Primate Constr. Inc. v. Silver*, 884 S.W.2d 151, 152 (Tex. 1994) (per curiam) (noting that strict compliance is necessary to withstand a direct attack). Extending these stringent standards to collateral attacks involving mere technical defects in service would pose a serious threat to the finality of judgments. *See King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003). "While no system is infallible, '[e]ndless litigation, in which nothing was ever finally determined, would be worse than the occasional miscarriages of justice.'" *Browning*, 165 S.W.3d at 348 (alteration in original) (quoting *Alexander v. Hagerdorn*, 226 S.W.2d 996, 998 (Tex. 1950)). Exercising personal jurisdiction under these circumstances does not violate due process.

Moreover, although the service is technically defective, the record shows that Rivera requested service of process on PNS's registered agent for service, and its agent's (Prentice Hall's) computer records reveal that it received the service and accompanying documents and forwarded them to PNS.[13]

---

[12] *See Browning*, 165 S.W.3d at 346 ("A collateral attack runs counter to this strong policy of finality because a collateral attack attempts to bypass the appellate process in challenging the integrity of a judgment.").

[13] Rivera's summary judgment evidence shows that notice of suit sent by certified mail, return receipt requested, was served on and received by Prentice Hall on May 25, 2000. Prentice Hall then generated a Notice of Service of Process form addressed to PNS describing the documents being forwarded to PNS and requesting that PNS acknowledge receipt. The notice included the following language: "Please acknowledge receipt of this notice and the enclosures by signing and returning the acknowledgment copy." According to Prentice Hall's computer records, on June 2, 2000,

Although PNS claims it did not receive notice of the suit until February 10, 2010, some nine years after the default was taken, service effected on a registered agent within the scope of its agency is imputed to the litigant. *See Preston Farm & Ranch Supply, Inc. v. Bio-Zyme Enters.*, 625 S.W.2d 295, 300 (Tex. 1981) (holding that notice to an agent, in the scope of his agency, is notice to the principal). And further, its agent's records reflect that PNS acknowledged receipt.

In sum, a judgment is void if the defects in service are so substantial that the defendant was not afforded due process. None of the defects at issue here deprived PNS of a meaningful opportunity to appear and answer Rivera's claims. When a defective citation is served, but the citation puts the defendant on notice of asserted claims in a pending suit, and the technical defects are not of the sort that deprive a litigant of the opportunity to be heard, we reject them as grounds sufficient to support a collateral attack. Because the trial court had jurisdiction over the subject matter of Rivera's claims and the technical defects in service at best render the default judgment voidable, not void, PNS may not collaterally attack the judgment.

### B. Extrinsic Fraud

Having rejected PNS's collateral attack on the judgment, PNS must rely on its bill of review to attack the default judgment directly. A direct attack can be in the form of a motion for new trial, appeal, or bill of review. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 504 (Tex. 2010). A bill of review is an equitable proceeding to set aside a prior judgment that is no longer subject to challenge by a motion for new trial or direct appeal. *Id*. It must, however, be brought within four

Prentice Hall received PNS's acknowledgment form.

10

years of the rendition of the judgment. *Caldwell v. Barnes*, 975 S.W.2d 535, 537 (Tex. 1998) (citing TEX. CIV. PRAC. & REM. CODE § 16.051). Here, PNS did not file its bill of review until approximately nine years after the default was rendered. If PNS can prove extrinsic fraud, however, the bill of review's four-year limitations period may be tolled. In affirming the summary judgment, the court of appeals concluded that there was no evidence of extrinsic fraud. We disagree.

A direct attack on "a judgment on the basis of extrinsic fraud is allowed because such fraud distorts the judicial process to such an extent that confidence in the ability to discover the fraudulent conduct through the regular adversarial process is undermined." *Browning*, 165 S.W.3d at 348. Extrinsic fraud is fraud that denies a litigant the opportunity to fully litigate at trial all the rights or defenses that could have been asserted.[14] *King Ranch*, 118 S.W.3d at 752. It occurs when a litigant has been misled by his adversary by fraud or deception, or was denied knowledge of the suit. *Alexander*, 226 S.W.2d at 1001. PNS argues that Tamez's failure to comply with Texas Rule of Civil Procedure 239a, his violations of the Texas Lawyer's Creed, and his extensive history of unethical conduct, including his disbarment, are indicative of extrinsic fraud.

We first address PNS's argument that Tamez misled the trial court by providing the clerk with PNS's registered agent's address as the last known address for PNS. Texas Rule of Civil Procedure 239a requires in relevant part:

---

[14] Intrinsic fraud, by contrast, "relates to the merits of the issues which were presented . . . . Within that term are included such matters as fraudulent instruments, perjured testimony, or any matter which was actually presented to and considered by the trial court in rendering the judgment assailed." *Tice v. City of Pasadena*, 767 S.W.2d 700, 702 (Tex. 1989) (orig. proceeding). Only extrinsic fraud will support a bill of review because each party must guard against an adverse finding on issues directly presented. *Id.*

> At or immediately prior to the time . . . [a] final default judgment is rendered, the party taking the same or his attorney shall certify to the clerk in writing the last known mailing address of the party against whom the judgment is taken . . . . Immediately upon the signing of the judgment, the clerk shall mail written notice thereof to the party against whom the judgment was rendered at the address shown in the certificate . . . .

TEX. R. CIV. P. 239a. PNS argues that Tamez knew: (1) PNS's contact information including the address of its corporate headquarters and its local store in San Antonio; (2) the name and address of the local attorneys who had defended PNS in the previous case involving the same claim; and (3) that PNS would certainly defend any refiled claim. This knowledge, according to PNS, is some evidence that Tamez purposefully provided the clerk with Prentice Hall's address instead of PNS's last known address to prevent PNS from discovering the default. This is especially so, PNS argues, in light of PNS's failure to appear after the previous service through Prentice Hall. Rule 239a is intended to ensure that the party in default receives personal notice.

Rivera responds that Tamez's violation of Rule 239a is not evidence of extrinsic fraud and points us to two cases. In *Layton*, Layton provided the clerk with the address she had been given by defendant Nationsbanc as the place to receive her payments. 141 S.W.3d at 764. The court of appeals stated that Nationsbanc had failed to demonstrate why that address would be fraudulent for the purpose of receiving notices of judgment. *Id.* In *Alderson v. Alderson*, the defendant failed to provide any evidence to show that the plaintiff engaged in a purposeful act of deception, because although the motion for summary judgment was mailed to the wrong address, there was no evidence that this was due to anything other than mistake or accident. 352 S.W.3d 875, 878 (Tex. App.—Dallas 2001, pet. denied).

12

We conclude that under the specific circumstances presented in this case, Tamez's failure to provide the clerk with PNS's last known address, which he knew, is some evidence of extrinsic fraud. In contrast to *Layton* and *Alderson*, Tamez knew PNS's mailing address, had corresponded with PNS and its counsel at this last known address only months earlier and instead chose to provide the clerk with the address of PNS's registered agent, Prentice Hall.

Next, PNS argues that Tamez's violations of the Texas Lawyer's Creed is evidence of extrinsic fraud. The Texas Lawyer's Creed, promulgated by this Court and the Court of Criminal Appeals, was intended to encourage lawyers to be mindful that abusive tactics—ranging from hostility to obstructionism—do not serve the justice we pursue. The Texas Lawyer's Creed—A Mandate for Professionalism, *reprinted in* TEXAS RULES OF COURT 865, 865 (West 2012). The Lawyer's Creed serves as an important reminder that the conduct of lawyers "should be characterized at all times by honesty, candor, and fairness." *Id.* The Lawyer's Creed states that an attorney "will not take advantage, by causing any default or dismissal to be rendered, when [he] know[s] the identity of an opposing counsel, without first inquiring about that counsel's intention to proceed." *Id*. at 867.

PNS argues that Tamez, in blatant violation of the Texas Lawyer's Creed, purposefully took a default judgment against PNS without contacting PNS's known attorneys and that he did so only three months after the federal court granted summary judgment in the first suit with full knowledge that PNS would defend the second lawsuit as vigorously as it had the first. The Lawyer's Creed, however, is aspirational. It does not create new duties and obligations enforceable by the courts beyond those existing as a result of (1) the courts' inherent powers and (2) the rules already in

13

existence.[15] *Id*. at 865. The failure to notify opposing counsel of an intent to take a default judgment does not trigger the courts' inherent powers. *See Cont'l Carbon Co. v. Sea-Land Serv., Inc.*, 27 S.W.3d 184, 189 (Tex. App.—Dallas 2000, pet. denied). A lawyer's failure to adhere to the Texas Lawyer's Creed may be evidence of a lack of professionalism or character, but Tamez's failure to adhere to the sprit and letter of this aspirational standard in this case is not itself evidence of extrinsic fraud.

Finally, PNS argues that Tamez's history of unethical conduct, including grievances filed against him, his subsequent disbarment, and his refusal to give deposition testimony, is evidence of extrinsic fraud. But "[e]vidence of other wrongs or acts is not admissible to prove character in order to show 'action in conformity therewith.'" *Serv. Corp. Int'l v. Guerra,* 348 S.W.3d 221, 235 (Tex. 2011) (quoting TEX. R. EVID. 404(a)). Such evidence may be admissible to show intent, however, if "the prior acts are 'so connected with the transaction at issue that they may all be parts of a system, scheme or plan.'" *Id*. (quoting *Oakwood Mobile Homes, Inc. v. Cabler*, 73 S.W.3d 363, 375 (Tex. App.—El Paso 2002, pet. denied)). Unless some connection can be drawn between PNS's failure to assert its rights in this case and Tamez's grievances and disbarment, they will not suffice as evidence of extrinsic fraud. *See King Ranch*, 118 S.W.3d at 752. Because PNS offers no connection here, these prior acts are not evidence of extrinsic fraud.

In sum, although Tamez's failure to abide by the Texas Lawyer's Creed and his unethical conduct are not evidence of extrinsic fraud, under the specific facts of this case, his failure to comply

---

[15] *See also* The Texas Lawyer's Creed—A Mandate for Professionalism, *reprinted in* TEXAS RULES OF COURT 865, 865 (West 2012) ("These standards are not a set of rules that lawyers can use and abuse to incite ancillary litigation or arguments over whether or not they have been observed.").

with Texas Rule of Civil Procedure 239a is sufficient to raise a genuine issue of material fact regarding extrinsic fraud and its effect on limitations.[16]

### III. Conclusion

The alleged technical defects in service render the judgment voidable, not void. Therefore, PNS cannot collaterally attack the judgment. But because there is some evidence of extrinsic fraud, a material fact issue remains regarding Rivera's limitations defense. Accordingly, we reverse the judgment of the court of appeals and remand the case to the trial court for further proceedings.

_____
Eva M. Guzman
Justice

OPINION DELIVERED: August 31, 2012

---

[16] Evidence of extrinsic fraud does not toll the bill of review's limitations period indefinitely. *See Defee v. Defee*, 966 S.W.2d 719, 722 (Tex. App.—San Antonio 1998, no pet.); *Maddux v. Brownen*, 759 S.W.2d 183, 185 (Tex. App.—Waco 1988, writ denied). A bill of review's four-year limitations period begins to run when the litigant knew or should have known about the default judgment. Rivera argues that because there is some record evidence that PNS acknowledged receipt of the judgment, PNS's bill of review was untimely. PNS responds that a letter from PNS's attorneys, dated at least six months after the default was taken, informed PNS that there had been no additional litigation pertaining to Rivera's slip and fall claim after the federal court granted PNS's summary judgment. PNS additionally cites testimony from its representative that PNS had no notice of the default judgment until it was served with the writ of execution. Because there is a factual dispute over when PNS learned of the default judgment, we do not resolve this issue.

15