

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | | |
|---|---|---|---|
| JD AUTO CORP., | § | No. 08-22-00187-CV | |
| Appellant, | § | Appeal from the | |
| v. | § | 384th Judicial District Court | |
| MICHAEL H. BELL, | § | of El Paso County, Texas | |
| Appellee. | § | (TC# 2021DCV0743) | |

**O P I N I O N**

This is an appeal from a summary judgment entered in a bill of review proceeding. By direct and collateral attack, Appellant JD Auto Corp. sought to overturn a no-answer default judgment rendered in favor of Appellee Michael H. Bell in his employment discrimination suit. On cross-motions for summary judgment, the trial court denied JD Auto's motion while simultaneously granting Bell's motion. On appeal, JD Auto contends it conclusively established a violation of procedural due process as a matter of law, rendering void the default judgment entered against it; alternatively, it contends it otherwise conclusively established the required elements of a bill of review and the default judgment was voidable. For the reasons that follow, we reverse the trial court's summary judgment, and render judgment in favor of JD Auto on its due process claim.

## FACTUAL AND PROCEDURAL BACKGROUND

From March to June 2013, Bell worked for JD Auto at its Viva Power Sports location in El Paso. After JD Auto terminated his employment, Bell filed a complaint with the Equal Employment Opportunity Commission alleging employment discrimination and other claims against the auto dealership. On January 7, 2015, after he received his notice of right to file a civil action regarding his complaint, he filed an employment discrimination lawsuit in the 384th Judicial District Court of El Paso County, Texas. The original petition described JD Auto as a Texas corporation "whom may be served with process by serving its registered agent, James A. Dick, IV, 5800 Montana, El Paso, Texas 79925 or wherever he/she may be found."

To effect personal service on JD Auto's registered agent, Bell retained Raymond Holt-Shirley, a process server qualified to serve civil process in El Paso County. On March 25, 2015, Holt-Shirley signed and filed a citation return that included a handwritten note indicating that delivery was not executed as to "defendant James Dick IV" (Dick). In the blank line intended to describe the diligence used in finding "said defendant," Holt-Shirley wrote on the return's form: "going to office, house, brother James Dick III." Completing the blank line for the cause of the failure to execute process, he noted: "never seems to be in office or home." Lastly, for the information received as to whereabouts of the defendant, he added, "out of town/office." Last, at the bottom of the return, Holt-Shirley's signature was notarized.

On the same date, the process server also filed an affidavit in support of a motion for substitute service, although no motion was included or filed at the time. In his affidavit, Holt-Shirley averred that he "attempted to make personal service" on "Defendant J. D. Auto Corporation," whose residence or office was believed to be at 5800 Montana, between January 14, 2015, and February 12, 2015, on the following occasions:

2

- January 14, 2015: He called the car dealership at 5800 Montana to speak with Dick. He spoke with "Melanie Sue, Kristi, or Ali Cherry," or one of the secretaries, who told him Dick was not in town and she did not know when he would return but that she would pass on the information to Dick when he called to check in.

- January 16, 2015: He visited 5800 Montana and spoke with a receptionist on the car dealership's top floor. He said he was there to deliver a set of legal documents to Dick but was told Dick was not there and would be back in about a week.

- January 23, 2015: He again called the car dealership to speak with Dick. A secretary told him Dick was not yet back in town.

- January 30, 2015: He spoke with Dick's brother. Dick's brother told him that Dick did not live at the address in question but gave him an alternate address in New Mexico and said "he was unsure if he was into[,] [sic]" that Dick had been traveling and should have returned by then.

- January 30, 2015: He visited the New Mexico address Dick's brother gave him. Finding no one home, he left a business card on the door and told a man he met on the property (who did not speak English) to tell Dick to call him.

- February 4, 2015: He again called the car dealership to speak with Dick. A secretary told him Dick was not there and he "comes and goes as he pleases." She declined to give him another phone number to reach Dick but said she would give Dick his message.

- February 12, 2015: He called the dealership to speak with Dick. He spoke with "Melanie Sue, Kristi, or Ali Cherry," or one of the secretaries, who told him Dick was not in town and   she had no date for a return.

Following the list of dates, the affidavit further averred as follows:

IV.

For the reasons set forth above, it is impractical to secure personal service on Defendant, Jessica Torres [sic] and I will be unable to do so despite due diligence. Therefore, substituted service is necessary and I believe **J.D. Auto Corporation– AGENT: James Dick IV**, will receive effective notice of this suit by posting copies of the citation and the attached petition in the El Paso County Court House[.]"

3

More than seven months later, on November 6, 2015, Bell filed a motion for substitute service. Although an affidavit of Holt-Shirley is referenced in the body of the motion, no affidavit was attached to the pleading.

On November 24, 2015, the trial court entered an order on motion for substitute service. The order authorized service on JD Auto either by posting a copy of the citation and petition at defendant's business address or by posting copies of the citation and the attached petition in the El Paso County Courthouse. Days later, on December 2, 2015, Holt-Shirley signed and filed a second return certifying that citation was posted on that date on the "County Courthouse door in El Paso County, Texas," in accordance with the law.

On August 10, 2016, the trial court called the case for hearing. By and through his attorney of record, Bell appeared while JD Auto neither answered nor appeared. Bell's counsel introduced the process server's filed affidavit and requested that the trial court take judicial notice of the court's record of the case. After Bell testified to damages, the trial court awarded Bell over $303,415 in lost wages, and past economic losses; and $300,000 in past compensatory damages. On the same date, the trial court rendered a final judgment noting that JD Auto failed to file an answer and appear within the time allowed by law, and the return of service was on file for ten or more days before the default judgment was rendered. Specifically, the judgment ordered that Bell recover from JD Auto $303,415 in past economic losses and $300,000 in past compensatory damages.

After more than four years elapsed, Bell applied for issuance of a writ of execution in December 2020. JD Auto was served with the writ of execution on March 1, 2021, by service on Dick, who remained its registered agent. Days later, the auto dealership filed a petition for bill of review, a request to vacate default judgment, and a request for injunctive relief. Among its claims,

4

it asserted it was not effectively or validly served with Bell's employment discrimination suit filed in the 384th Judicial District Court, which resulted in the 2016 default judgment. Moreover, it urged the four-year limitations period to bring a bill of review was tolled due to Bell's extrinsic fraud in securing said judgment. JD Auto pleaded that it first obtained knowledge of Bell's lawsuit on March 1, 2021, when a detective with the El Paso County Sheriff's Department appeared at its office at 414 Executive Blvd., to serve a writ of execution. Responding, Bell answered with a general denial that not only included a limitations defense but also claimed that because JD Auto had unclean hands it was not entitled to equitable relief.

Subsequently, Bell moved for summary judgment on the petition for bill of review on two grounds: (1) limitations, because he committed no extrinsic fraud, and the petition was filed more than four years after the default judgment was rendered; and (2) lack of due process violation, because he served JD Auto in compliance with the terms of a substitute service order. He also argued for the first time that service on JD Auto had included "posting on the door of its business premises." Bell thus posited that any technical defect in service did not amount to a "complete failure or lack of service," which would violate due process.

Opposing Bell's motion, JD Auto contended Bell committed extrinsic fraud to justify substitute service by representing to the trial court that the process server made seven or eight unsuccessful attempts to serve Dick, when the only "one real attempt at service at the address he attested as the residence or office JD Auto's representative for service" was the in-person attempt made on January 16, 2015. Supporting its response, JD Auto attached Dick's affidavit along with several exhibits including credit card statements, photographs, employment records, and certified records of the employment discrimination case.

5

Additionally, JD Auto filed a cross-motion for summary judgment on its bill of review, asserting Bell's attempts at service of citation in the employment discrimination case did not meet due process requirements and his claimed attempts were not reasonably effective to provide notice of the suit. Among other arguments, JD Auto claimed the purported service by posting at the courthouse did not satisfy constitutional due process requirements in that Bell failed to meet minimum standards of diligence in attempting personal service. JD Auto suggested the process server's affidavit was fatally defective due to the misidentification of the defendant therein as "Jessica Torres." JD Auto urged that because notice was posted inside the glass case in the courthouse, rather than directly on the courthouse door as ordered, Bell failed to strictly comply with the express requirements of the ordered service. Further, JD Auto contended that posting at the courthouse did not meet the constitutional requirements of due process regardless because no evidence was presented to show the service was "reasonably calculated, under all the circumstances, to apprise [JD Auto] of the pendency of the action . . . [.]" JD Auto argued that Bell only recently claimed in his motion for summary judgment that he had posted legal process on an alleged right-hand door of the double doors of the front entrance of the showroom at 5800 Montana. JD Auto pointed out that Bell's recent claim of additional service by posting at its business address was not before the trial court when the default judgment was rendered in August 2016. JD Auto denied Bell's claim of his posting at its business premises. Finally, JD Auto pointed out that there are no temporal limits on attacking a void judgment.

The trial court granted Bell's motion for summary judgment and denied JD Auto's cross-motion for summary judgment without specifying the grounds for its decisions. This appeal challenged that order.

## ISSUES ON APPEAL

JD Auto brings three issues. In the first two issues, it contends the trial court erred in failing to grant its motion for summary judgment based on two independent theories. First, as a direct attack on the default judgment, JD Auto contends it conclusively established: (1) extrinsic fraud in Bell seeking an order for substitute service, which tolled the bill of review limitations period; and (2) Bell's subsequent failure to strictly comply with the trial court's substitute service order. Second, as a collateral attack on the judgment, it contends it conclusively established a constitutional due process violation, resulting in the trial court's lack of personal jurisdiction over it in the employment lawsuit. Lastly, in its third issue, JD Auto addresses the disposition of the appeal, or what it believes the resulting judgment should be, depending on whether this Court sustains either its first or second issue.

As a threshold matter, we first consider how we wish to order our discussion in light of the issues presented. Based on the issues presented, we determine we will address the second issue first pertaining to the collateral attack on the default judgment. If JD Auto conclusively establishes a violation of its right to constitutional due process, it follows that Bell's default judgment is void, not voidable. *See PNS Stores, Inc. v. Rivera*, 379 S.W.3d 267, 271-72 (Tex. 2012) (clarifying distinctions between void and voidable judgments and direct and collateral attacks). In that event, it would be unnecessary to next examine the first issue as to whether JD Auto conclusively established the required elements of its bill of review. *See* TEX. R. APP. P. 47.1. But if we determine instead that JD Auto did not conclusively establish a constitutional due process violation, it would in fact be necessary to consider the first issue. Finally, the determination of the third issue depends on our determination of either the first or second issue.

## STANDARD OF REVIEW

We review a trial court's granting of summary judgment de novo. *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018). We take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003); *see City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). When parties bring cross-motions for summary judgment, each party has the burden to establish its entitlement to judgment as a matter of law. *Miles v. Texas Cent. R.R. & Infr.*, 647 S.W.3d 613, 619 (Tex. 2022). When one party's motion is granted and the other is denied, we "'determine all questions presented' and 'render the judgment that the trial court should have rendered.'" *Id.* (quoting *City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 356 (Tex. 2000)). Because the trial court does not specify its basis for granting summary judgment, we will affirm if any of the summary judgment grounds presented and preserved for appellate review have merit. *Knott*, 128 S.W.3d at 216.

Whether a court has personal jurisdiction over a defendant is a question of law that we review de novo. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002); *Creaven v. Creaven*, 551 S.W.3d 865, 870 n.6 (Tex. App.—Houston [14th Dist.] 2018, no pet.).

## APPLICABLE LAW

### A.  The bill of review

A bill of review is an equitable proceeding to set aside a judgment that is no longer subject to challenge by a motion for a new trial or direct appeal. *Katy Venture, Ltd. v. Cremona Bistro Corp.*, 469 S.W.3d 160, 163 (Tex. 2015) (per curiam) (quoting *Mabon Ltd. v. Afri-Carib Enters.*, 369 S.W.3d 809, 812-13 (Tex. 2012) (per curiam)). Its purpose is "to provide a failsafe against manifest injustice and the wrongful deprivation of a litigant's right to trial and appeal in

extraordinary circumstances." *Bowers v. Bowers*, 510 S.W.3d 571, 577 (Tex. App.—El Paso 2016, no pet.).

"Bills of review can be sought under statutory law or common law in equity." *In re Miramontes*, 648 S.W.3d 590, 600 (Tex. App.—El Paso 2022, no pet.) (citing *Valdez v. Hollenbeck*, 465 S.W.3d 217, 226 (Tex. 2015)). Traditionally, a claimant seeking an equitable bill of review must establish the following: "(1) a meritorious defense to the underlying cause of action, (2) which [the claimant was] prevented from making by the fraud, accident or wrongful act of the opposing party or official mistake, (3) unmixed with any fault or negligence on [the claimant's] own part." *Katy Venture*, 469 S.W.3d at 163. Importantly, however, a party "who is not served with process is entitled to a bill of review without a further showing, because the Constitution discharges the first element, and lack of service establishes the second and third." *Ross v. Nat'l Ctr. for the Emp. of the Disabled*, 197 S.W.3d 795, 797 (Tex. 2006) (per curiam).

Absent a showing of extrinsic fraud—i.e., collateral fraud denying a party the opportunity to fully litigate the rights and defenses it was entitled to assert at trial—a bill of review must be filed within four years of the final judgment which the plaintiff seeks to set aside. *Sotelo v. Scherr*, 242 S.W.3d 823, 827 (Tex. App.—El Paso 2007, no pet.).

### B.   The collateral attack

Any time after the time for filing an appeal has expired, a party to a final judgment may collaterally attack the judgment on the ground that the judgment was void. *Caballero v. Vig*, 600 S.W.3d 452, 458 (Tex. App.—El Paso 2020, pet. denied). A judgment is void—rather than voidable—when "the court rendering judgment had no jurisdiction of the parties or property, no jurisdiction of the subject matter, no jurisdiction to enter the particular judgment, or no capacity to act." *PNS Stores, Inc.*, 379 S.W.3d 267 at 272.

The United States Supreme Court held in *Peralta v. Heights Med. Ctr., Inc.*, 485 US. 80, 84 (1988), that "a judgment entered without notice or service is constitutionally infirm." There, the Court stated, " '[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under the circumstances, to apprise interested parties of the pendency of the action. . . .'" *Id.* (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). Thus, the "[f]ailure to give notice violates 'the most rudimentary demands of due process of law.'" *Id.* (quoting *Armstrong v. Manzo*, 380 U.S. 545, 550 (1965)). Based on these holdings, *PNS Stores* noted that some form of attack must be available when defects in personal jurisdiction violate due process. 379 S.W.3d at 272-273. As a result, a judgment may also be challenged through a collateral attack when a failure to establish personal jurisdiction violates due process. *Id.* Although courts are to presume a collaterally attacked judgment is valid, "that presumption disappears when the record establishes a jurisdictional defect." *Id.* at 273 (citing *Alfonso v. Skadden*, 251 S.W.3d 52, 55 (Tex. 2008)). In such case, we may look beyond the face of the judgment to determine whether the record before the trial court affirmatively demonstrates the trial court lacked jurisdiction at the time it rendered judgment. *Id.*

Generally, we review only "the record before the trial court at the time the trial court rendered the challenged judgment." *Topletz v. Wadle*, No. 05-21-00047-CV, 2023 WL 154878, at *5 (Tex. App.—Dallas Jan. 11, 2023, no pet.) (mem. op.) (citations omitted). "The record affirmatively demonstrates a jurisdictional defect sufficient to void a judgment when it . . . exposes such personal jurisdictional deficiencies as to violate due process." *PNS Stores*, 379 S.W.3d at 273. While a complete failure or lack of service violates due process, technical defects in services do not. *Id.*

10

As a general rule, however, "extrinsic evidence cannot be considered in a collateral attack to set aside a final judgment." *Mitchell v. MAP Res., Inc.*, 649 S.W.3d 180, 190 (Tex. 2022) (citing *Templeton v. Ferguson*, 33 S.W.329, 332-33 (1895) and *Crawford v. McDonald*, 33 S.W.325, 238 (1895)). Nevertheless, this evidentiary bar does not extend to "cases over which a court has not, under the very law of its creation, any possible power." *Id*. at 190-91. Further explaining, *Mitchell* reiterated that it had previously observed that "the law of Texas court's creation includes the United States Constitution." *Id*. at 191 (citing *York v. State*, 373 S.W.3d 32, 42 (Tex. 2012). "When addressing proper service in an ad valorem tax case, *Mitchell* found no bar applied to public records as 'the Constitution and Rule 117a of the Texas Rules of Civil Procedure required a plaintiff to consult public deed and tax records as part of its diligent inquiry when a defendant's name or residence is unknown, and the contents of those records should be regarded as part of the record of the suit rather than as extrinsic evidence." *Id*. at 191.

## COLLATERAL ATTACK

In its second issue, JD Auto collaterally attacks Bell's default judgment based on a violation of its due process rights under the United States and Texas Constitutions. It contends that "[d]ue process requires service of process that is reasonably designed to inform the defendant of the lawsuit, before resorting to substitute service." It argues that collateral attacks on a judgment are appropriate when due process rights are violated, including attacks brought via a bill of review. JD Auto claims the trial court erred in denying its motion for summary judgment because it conclusively established a lack of personal jurisdiction, resulting in a default judgment that is void as a matter of law. Responding, Bell denies that a due process violation was shown.

## A. Applicable law regarding personal jurisdiction

"The Due Process Clause of the United States Constitution prevents the government from depriving a person of his or her 'property, without due process of law.'" *Mitchell*, 649 S.W.3d at 188 (quoting U.S. CONST. amend XIV, § 1; TEX. CONST. art. 1, § 19). Deprivation of property must be preceded by notice and an opportunity to be heard. *Id*. at 189 (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 313 (1950)). Such "[n]otice must be 'reasonably calculated, under the circumstances, to apprise interested parties of the pendency of the action and afford them the opportunity to present their objections.'" *Id.* (quoting *Peralta*, 485 U.S. at 84).

Personal jurisdiction is a necessary component of a valid judgment and depends "upon citation issued and served in a manner provided for by law." *In re E.R.*, 385 S.W.3d 552, 563 (Tex. 2012) (quoting *Wilson v. Dunn*, 800 S.W.2d 833, 836 (Tex. 1990)). When service is invalid, the court cannot establish jurisdiction over a party. *Id.* at 563 (citing *Uvalde Country Club v. Martin Linen Supply Co.*, 690 S.W.2d 884, 885 (Tex. 1985) (per curiam)).

A judgment is void and subject to collateral attack "if the defects in service are so substantial that the defendant was not afforded due process." *PNS Stores*, 379 S.W.3d at 275. "Personal service of written notice within the jurisdiction is the classic form of notice always adequate in any type of proceeding." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 313 (1950). "'[I]f personal service can be effected by the exercise of reasonable diligence, substitute service is not to be resorted to.'" *E.R.*, 385 S.W.3d at 564 (quoting *Sgitcovich v. Sgitcovich*, 241 S.W.2d 142, 147 (Tex. 1951)). Reasonable diligence "must include inquiries that someone who really wants to find the defendant would make" and is measured by the quality of the search, not by its quantity. *E.R.*, 385 S.W.3d at 565 (citing *Mullane*, 339 U.S. at 315).

Additionally, when substitute service is sought, its form must not only be premised upon evidence that shows it "will be reasonably effective to give the defendant notice of the suit," but it also must not be "substantially less likely to bring home notice than other of the feasible and customary substitutes." *Mitchell*, 649 S.W.3d at 189 (quoting *Mullane*, 339 U.S. at 315); *see also* TEX. R. CIV. P. 106(b)(2) (allowing substitute service, under certain circumstances, in any other manner that the statement or other evidence shows "will be reasonably effective to give the defendant notice of the suit"). To that end, "[w]hile the sufficiency of notice is fact-specific to each case, if notice is not meaningful, constitutional due process requirements are not satisfied." *Miramontes*, 648 S.W.3d at 601. As relevant here, *Mitchell* described, "notice by publication must be scrutinized because 'chance alone' brings a resident's attention to a notice . . . posted on a courthouse door." *Mitchell*, 649 S.W.3d at 191.

## B. Parties' arguments

JD Auto argues the trial court erred by ordering substitute service after a lone attempt of personal service at its business address. Discounting the other efforts claimed by Holt-Shirley, it maintains that phone calls alone unaccompanied by efforts at personal service still fail under basic standards for reasonable diligence. Similarly, it maintains that personal attempts at two addresses that are unproven as connected to the defendant should not be viewed as valid attempts at personal service nor otherwise considered in the diligence inquiry because these alternative "methods" are inadequate as a matter of law.

Secondly, JD Auto contends that even if the trial court determined that substituted service was necessary, its order should have permitted service by other methods more likely to reach Dick: namely, those authorized by Texas Rule of Civil Procedure 106(a)(2) and Texas Business Organizations Code §§ 5.252 and 5.253. With regard to the substituted service that was approved

by the trial court's order, JD Auto further argues Bell did not "strictly comply" with the court's order. It points out that, instead of posting on the courthouse door as ordered, Bell posted inside a glass case at the courthouse.

Contrasted with these claims, Bell maintains the trial court correctly granted summary judgment on due process grounds. As to reasonable diligence, while Bell agrees that service by posting at the courthouse is insufficient as a first resort if personal service has not yet been attempted, he argues the method is not unconstitutional and contends the process server's affidavit properly "detailed diligent service attempts sufficient to allow for substitute service" in Dick's absence. He also contends the cases JD Auto cites in which courts found service by posting unconstitutional are distinguishable in that they (1) "do not involve attempts to first serve a defendant . . . personally before proceeding to alternate service"; (2) involve proceedings with heightened constitutional considerations and thus a higher standard of diligence, such as parental termination proceedings; (3) involve a defendant residing outside the country; or (4) involve a location where notices are "not infrequently removed." Further, Bell argues service was properly effectuated because notice was posted at the El Paso County Courthouse consistent with Rule 106(b)(2), and no special circumstances render service by posting a due process violation. Quoting from this Court's opinion in *Singh*, Bell explains he does not have to prove JD Auto received actual notice upon substitute service; the question is whether the return of service shows that "service was achieved in a manner directed by the court." *Singh v. Trinity Mktg. & Distrib. Co. Inc.*, 397 S.W.3d 257, 263-64 (Tex. App.—El Paso 2013, no pet.). Bell maintains service was achieved in strict compliance with the trial court's substitute service order, and regardless, technical defects do not defeat such service.

In the event this Court finds posting at the courthouse constitutionally defective, Bell alternatively urges that we affirm the summary judgment in his favor based on service "by posting at J.D. Auto's headquarters in accordance with the terms of the substitute service order." For even though the citation return shows service by posting only at the courthouse, a 2021 amended affidavit proffered in the bill of review proceedings indicates otherwise, and, according to Bell, "the Texas Supreme Court's decision in *Mitchell* appears to alter the rule that extrinsic evidence may not be considered in a collateral attack on a judgment."

**C. Analysis**

In his motion for substitute service, Bell claimed that service on JD Auto had been unsuccessful on "Defendant, J.D. Auto Corporation," as shown in the affidavit of Holt-Shirley, the person who attempted service "by personal delivery on James A. Dick, IV." In turn, Holt-Shirley's affidavit averred he believed the residence or office of "Defendant, J.D. Auto Corporation," was at 5800 Montana, El Paso, Texas. Holt-Shirley next averred that he attempted personal service on "Defendant, J.D. Auto Corporation," on at least seven occasions from January 15, 2015, through February 12, 2015.

The first attempt described a phone call made to two phone numbers connected to 5800 Montana, which resulted in "one of the secretaries (Melanie Sue, Kristi, or Ali Cherry)," responding that Dick was not in town. Two days later, Holt-Shirley claimed he arrived at 5800 Montana and walked up the stairs to the top floor where he "spoke with a receptionist or secretary" who again reported that Dick was out of town on business. After visiting 5800 Montana, Holt-Shirley next claimed at least five more instances of attempted personal service on "Defendant, J.D. Auto Corporation." Of those five attempts, three were phone calls and two were personal visits to an address, but not to 5800 Montana. In concluding the affidavit, Holt-Shirley averred, without

15

explanation, that it was "impractical to secure personal service on Defendant, Jessica Torres," and that he would be unable to do so despite due diligence. Based on these efforts, he asserted that substitute service was necessary, and he believed "J.D. Auto Corporation - AGENT: James Dick IV, [would] receive effective notice of [the] suit by posting copies of the citation and the attached petition in the El Paso County Court House, El Paso, Texas." Based on Holt-Shirley's affidavit, Bell's motion sought substitute service either by posting at JD Auto's business address or by posting at the El Paso County Courthouse.

On its face, the process server's affidavit is problematic in its reference to the impracticality of personal service on "Defendant, Jessica Torres[,]" and the server's inability to do so despite due diligence. Under Rule 106, a request for substitute service must be accompanied by an affidavit or sworn statement "listing any location where the defendant can probably be found and stating specifically the facts showing that service has been attempted [in person or by certified mail, return receipt requested] at the location named in the statement but has not been successful[.]" TEX. R. CIV. P. 106(b). "[S]ubstitute service is not authorized under Rule 106(b) without an affidavit which meets the requirements of the rule demonstrating the necessity for other than personal service." *Wilson*, 800 S.W.2d at 836 (interpreting a previous version of Rule 106(b) that did not recognize the acceptability of a sworn statement). Only a "complete failure or lack of service," as opposed to technical defects in service, violates due process and subjects a judgment to collateral attack. *See PNS Stores*, 379 S.W.3d at 273-74.

Here, the affidavit's reference to "Defendant Jessica Torres," is the only place where Holt-Shirley claims impracticality to secure personal service despite due diligence. Moreover, no information is otherwise provided to connect Torres to JD Auto. As a result, the process server does not affirmatively declare it would be impractical to secure personal service on JD Auto or on

16

its registered agent, Dick, despite his exercise of due diligence. With its reference to "Jessica Torres" instead of to registered agent Dick, the affidavit patently failed to establish impracticality in personally serving JD Auto despite claims of due diligence. Moreover, the process server's return of service, which was also before the trial court, stated matters differently in its description of "the diligence used in finding" Dick, along with "the cause of failure to execute this process[.]"

Yet, the quality of the process server's attempts at personally serving registered agent Dick before resorting to substituted service is even more troubling than how it misidentified the actual defendant. In order to satisfy the requirements of due process, a party must use reasonable diligence to effect personal service before resorting to substitute service through posting. *See E.R.*, 385 S.W.3d at 564. Reasonable diligence in searching for a party upon whom to effect service is characterized by the quality of the search—not its quantity—and it "must include inquiries that someone who really wants to find the defendant would make[.]" *See id.* at 565. Here, Bell knew the location of JD Auto's "residence or office," at 5800 Montana in El Paso, and he knew Dick was JD Auto's registered agent for service of process. Despite such knowledge, the process server made only one attempt to personally serve the registered agent at 5800 Montana, and he did so only two days after he had been told the agent was out of town.[1] During that visit, he claimed that after he was greeted by a receptionist or secretary, he simply asked to speak to Dick and reported he was there to deliver a set of legal documents. Although the affidavit further claims that Holt-Shirley was informed that Dick would return in a week or so, none of his remaining entries claim he returned to the known business location to attempt personal service on the registered agent.

---

[1] Although the dissent determines that Dick was "consistently unavailable," and cites non-binding cases indicating that personal service had become "impossible," we see no evidence in this record to reasonably infer that Dick was avoiding service or that Holt-Shirley affirmatively claimed that personal service on him was impractical.

17

Despite the process server's lack of additional attempts at personal service, Bell claims other actions demonstrate diligence in attempting to serve JD Auto. We do not agree. At best, the process server merely claims he made four phone calls, one of which was made prior to his in-person visit, and each time he claimed he spoke to "one of the secretaries." Neither in any of these calls nor at the in-person visit did the process server indicate to anyone that he possessed documents from a pending lawsuit which he needed to deliver to JD Auto's registered agent. Rather, as to the three contacts in which he detailed his purpose, he merely said he needed to deliver a "set of legal documents" to Dick.

Apart from the calls, two of the process server's other attempts involved contacts he made with non-parties at addresses not included in the citation or further explained as places where JD Auto's registered agent could be served. An attempt to find an entity's registered agent at any address other than the entity's registered office is irrelevant to a determination of reasonable diligence. *BLS Dev., LLC v. Lopez*, 359 S.W.3d 824, 827 (Tex. App.—Eastland 2012, no pet.) ("The only relevant attempt of service, for purposes of determining reasonable diligence, is the process server's sole attempt at service on the registered agent at the registered office."). In addition to being irrelevant, those "attempts" did not advance the process server any closer toward completing personal service at the registered office. In one attempt, the process server spoke with Dick's brother who merely confirmed that Dick did not live at the location provided. Moreover, the process server's affidavit did not in fact state that he personally visited the alternate address, that he knew of any connection between Dick and the address, or that Dick could be found at the location. The process server next claims he asked Dick's brother for a different address. Claiming another "attempt," he next went to the New Mexico location that was provided and told someone who did not speak English to "inform his boss to call [the process server] as [he] had a set of legal

18

papers for him." The affidavit did not establish that Dick could probably be found at this location or that Dick was the non-English-speaker's boss.

On this record, we conclude the process server's affidavit established at most that he visited JD Auto's business address one time in an attempt to personally serve process on the business. Yet, we have not been directed to any case supporting the proposition that a single failed attempt at effecting service on a registered agent at an ongoing place of business is sufficient to warrant substituted service through posting. *Compare Ingram Indus., Inc. v. U.S. Bolt Mfg., Inc.*, 121 S.W.3d 31, 34 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (one visit to registered agent's address was reasonably diligent under the predecessor to § 5.251 of the Business Organizations Code where additional visits would be futile and substitute service was made on the secretary of state); *Acadian Props. Austin, LLC v. KJMonte Invests., LLC*, 650 S.W.3d 98, 108 (Tex. App.— El Paso 2021, no pet.) (finding no attempts on registered agent necessary if attempt would be futile and substitute service is made under TEX. BUS. ORG. CODE ANN. § 5.251); *J&J Container Mfg., Inc. v. Cintas-R U.S., L.P.*, No. 01-14-00933-CV, 2015 WL 5829667, at (Tex. App.—Houston [1st Dist.] Oct. 6, 2015, no pet.) (mem. op) (describing at least one attempt to serve the registered agent must be made before resorting to substitute service through the secretary of state); *with Paramount Credit, Inc. v. Montgomery*, 420 S.W.3d 226, 233 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (one attempt not sufficient when no name whatsoever was given for the registered agent on the original citation and return); *Robb v. Horizon Cmtys. Improvement Ass'n Inc.*, 417 S.W.3d 585, 591 (Tex. App.—El Paso 2013, no pet.) (one attempt at personal service insufficient when that attempt was no more than hiring detective agency that refused to attempt service due to the only address being a post office box and no attempt at service by certified mail was made).

The fact remains—the address for JD Auto's place of business and its registered agent was continuously known to Bell, and the address proved to be valid for an operating business. Although the citation return states Dick "never seems to be in the office[,]" the process server did not allege that Dick was evading service and provide a basis for such assertion. Someone was present at the business or answered the phone during every one of the process server's contacts with JD Auto. Although someone told the process server that Dick was out of town on January 14, 16, and 23, Dick's brother told him on January 30 that Dick should have returned by then. And when the process server called JD Auto on February 4 and 12, "one of the secretaries" simply told him that Dick "comes and goes as he pleases." After one visit, the process server never returned to the location to personally serve Dick. In addition, although Bell purported to attempt service on Dick in his capacity as registered agent for JD Auto, he never revealed his purpose in any of his communications with persons at the business location. Nor did the process server reveal the documents he was trying to serve included a lawsuit and citation.

The means Bell employed in his attempts to personally serve JD Auto's registered agent are not ones that someone "desirous of actually informing" a defendant of a lawsuit "might reasonably adopt" to accomplish notice. *See Mullane*, 339 U.S. at 315. We thus determine the evidence before the trial court at the time of the request for substituted service conclusively established that Bell had failed to exercise reasonable diligence in his attempts to actually serve JD Auto at its operating business location before he resorted to substituted service. *See Sgitcovich*, 241 S.W.2d at 147; *Mitchell*, 649 S.W.3d at 189.

Relatedly, we are not convinced that Bell's chosen method of substituted service met the requisites of due process. Rule 106(b)(2) encompasses the due process requirement in that it allows

20

substitute service, under certain circumstances, in any other manner that the evidence shows "will be reasonably effective to give the defendant notice of the suit." TEX. R. CIV. P. 106(b)(2).

To meet the due process threshold reflected in Rule 106(b)(2), Bell would have had to produce evidence showing the chosen option of posting at the courthouse was reasonably calculated to apprise JD Auto of the suit. *See Mullane*, 339 U.S. at 314; *Mitchell*, 649 S.W.3d at 189. Whereas Bell's motion for substitute service asserts "[r]easonable effective notice . . . may be given to [Dick and JD Auto]," either by posting at JD Auto's business address or by posting in the El Paso County Courthouse, the only information supporting reasonably effective notice by posting is a conclusory statement without a factual basis. In the process server's affidavit, it provides: "I believe J.D. Auto Corporation–Agent: James Dick IV, will receive effective notice of this suit by posting copies of the citation and the attached petition in the El Paso County Court House, El Paso, Texas." The process server's affidavit fails to include facts detailing why such posting would be reasonably effective to give JD Auto notice of the suit. *See Mitchell*, 649 S.W.3d at 192; *Mullane*, 339 U.S. at 315; *see also Wilson*, 800 S.W.2d at 836 ("Since the 1981 change in Rule 106(b) the courts have consistently held that substitute service may not properly issue on a motion supported by an affidavit that is conclusory or otherwise insufficient."). Accordingly, because the record before the court on the request for substitute service was completely devoid of evidence that posting at the courthouse was reasonably calculated to give JD Auto notice of the suit, it fails to meet due process requirements. *See Miramontes*, 648 S.W.3d at 601 ("[I]f notice is not meaningful, constitutional due process requirements are not satisfied.").

Not only does the record fail to support the contention that posting at the courthouse would, with reasonable certainty, give notice to JD Auto, it shows the opposite as other feasible and customary substitutes would have been substantially more likely to provide notice. *See Mitchell*,

649 S.W.3d at 189 (quoting *Mullane*, 339 U.S. at 315). Before Bell resorted to substitute service, actual service could have been attempted through certified or registered mail under Rule 106(a)(2) sent to 5800 Montana, where Bell knew JD Auto was conducting business on an ongoing basis. Additionally, substitute service could have been sought through the secretary of state under § 5.251 of the Business Organizations Code, or upon a person over the age of sixteen at 5800 Montana under Rule 106(b). Any of these methods would have been substantially more likely to provide notice to JD Auto—a business whose address was known, and where the process server was greeted each time he visited or called—as opposed to a chance encounter with a citation posted at the courthouse.[2] *See Mitchell*, 649 S.W.3d at 189, 191.

While Bell attempts to distinguish the level of constitutional protection afforded here versus the level afforded in cases involving parental or property rights, we disagree with that distinction. Rather, the constitutional standard for due process protection does not erode because a case implicates money damages and not something different. *See Mitchell*, 649 S.W.3d at 188–89 ("It is well settled that these words 'require that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the

---

[2] Bell urges us to consider the process server's 2021 affidavit as evidence that the citation was also posted at JD Auto's business address. In a bill of review proceeding, "parties may introduce affidavits, depositions, testimony, and exhibits to explain what happened" in the underlying suit, including an amended proof of service. *Fid. & Guar. Ins. Co. v. Drewery Const. Co., Inc.*, 186 S.W.3d 571, 573 (Tex. 2006) (per curiam); *Propel Fin. Servs., LLC v. Conquer Land Utils., LLC*, 579 S.W.3d 485, 490 n.6 (Tex. App.—Corpus Christi 2019, pet. denied). However, in a collateral attack, our review is limited to the record before the trial court at the time it rendered the challenged judgment. *Topletz v. Wadle*, No. 05-21-00047-CV, 2023 WL 154878, at *5 (Tex. App.—Dallas Jan. 11, 2023, no pet.) (citations omitted). Despite Bell's suggestion that *Mitchell* allows us to rely on the statement in the 2021 amended service affidavit that he also posted notice at JD Auto's headquarters as appropriate extrinsic evidence against the collateral attack on the default judgment, we do not read it that way. To the contrary, regarding this type of extrinsic evidence, the Texas Supreme Court in *Mitchell* asserted that concerns such as manipulation and fading memories animate the courts' "application of the bar on extrinsic evidence" in a collateral attack, *other than extrinsic evidence of public records*. *Mitchell v. MAP Res., Inc.*, 649 S.W.3d 180, 191 (Tex. 2022) (emphasis added).

case.") (quoting *Mullane*, 339 U.S. at 313); *see also* TEX. CONST. art. I, § 19 ("No citizen of this State shall be deprived of . . . property . . . except by the due course of the law of the land.").

Ultimately, JD Auto conclusively established by collateral attack that the record before the trial court at the time of the default judgment established it lacked personal jurisdiction over it—that is, Bell did not exercise reasonable diligence in attempting personal service upon JD Auto before resorting to substitute service, there was no evidence in the record to indicate that posting at the courthouse was reasonably calculated to give JD Auto notice of Bell's suit, and other forms of personal or substituted service would have been more likely to give JD Auto notice reasonably calculated to apprise it of the suit. *See PNS Stores*, 379 S.W.3d at 273. For these reasons, we conclude that JD Auto conclusively established a violation of its due process rights.

Accordingly, we sustain JD Auto's second issue.

Having concluded that JD Auto prevailed on its collateral attack, we further conclude the default judgment rendered against it was void as a matter of law. *See id.* ("The record affirmatively demonstrates a jurisdictional defect sufficient to void a judgment when it . . . exposes such personal jurisdictional deficiencies as to violate due process."). Based on that determination, we must also sustain JD Auto's third issue.

Because of our disposition of the second and third issues, we do not reach the first issue. *See* TEX. R. APP. P. 47.1.

## CONCLUSION

Because JD Auto established it was not properly served with process as to Bell's lawsuit for employment discrimination, the trial court lacked personal jurisdiction to enter a no-answer default judgment against it in 2016. On this record, we conclude the trial court erred in granting Bell's motion for summary judgment while denying JD Auto's cross-motion for summary

23

judgment. We therefore reverse the trial court's judgment in favor of Bell, and we render final summary judgment for JD Auto on its claim of a violation of its due process rights.

GINA M. PALAFOX, Justice

October 13, 2023

Before Rodriguez, C.J., Palafox, and Soto, JJ
Rodriguez, C.J., dissenting
Soto, J., concurring